**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| CHRISTIAN PEYTON, SALEM ZAHN, and ERNEST EASTER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 2:26-cv-04039-WJE |
| v. | |
| VETERANS UNITED HOME LOANS, REALTY SEARCH SOLUTIONS, LLC (d/b/a VETERANS UNITED REALTY), and MORTGAGE RESEARCH CENTER, LLC, Missouri Corporations, | |
| Defendants. | |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    VA Loans Are a Valuable Home Loan Benefit. ....................................... 2

    B.    VUHL Has Become the "#1 VA Lender" By Making VA Loans Accessible.......... 3

    C.    VUHL Discloses that It Is Not Affiliated with the Government............................ 5

    D.    This Lawsuit.......................................................................................... 5

LEGAL STANDARD ............................................................................................. 7

ARGUMENT ......................................................................................................... 7

I.    Plaintiffs Lack Article III Standing. ................................................................ 7

II.    Plaintiffs Fail to State an MMPA Claim. ........................................................ 9

    A.    Plaintiffs Do Not Allege Deceptive Conduct Required to Plead Their Claims. .......................................................................................... 9

        1.    Plaintiffs' Complaint Confirms that Defendants' Brand Names and Websites Are Not Deceptive. ................................ 10

        2.    Plaintiffs' Allegations of "Steering" and Undisclosed Fees Fail to Adequately Plead Deceptive Conduct. ................... 12

    B.    Plaintiffs Have Not Alleged an Ascertainable Loss. ............................... 13

    C.    Plaintiffs Have Not Alleged a Transaction in Missouri. ....................... 14

III.    Plaintiffs Fail to State a RESPA Claim. ........................................................ 15

    A.    The RESPA Claims Are Barred by the Statute's Safe Harbor.............................. 15

    B.    Plaintiff Peyton Fails to Allege a RESPA Section 2607(a) Violation. .................. 17

        1.    Plaintiff Peyton Could Not Be "Referred" to a Provider He Already Was Using. ................................................................. 17

        2.    Hypothetical Future Leads Are Not a "Thing of Value."......................... 20

        3.    Plaintiffs Do Not Allege the Details of or Parties to Any Agreement.............................................................................. 21

i

      C.      Plaintiffs' RESPA Section 2607(b) Fails Because They Do Not Plausibly Allege They Paid an Unlawful Commission Split. ................................ 21

      D.      Plaintiffs Peyton's and Easter's RESPA Claims Are Time-Barred. ...................... 22

IV.     Plaintiffs Fail To State An Unjust Enrichment Claim. ....................................................... 24

V.      Plaintiffs Engage in Impermissible Group Pleading. ........................................................ 25

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Comm'r of Internal Revenue*,
154 F.4th 574 (8th Cir. 2025) ...............................................................................................19

*Abbott v. Golden Grain Co.*,
677 F.Supp.3d 940 (E.D. Mo. June 13, 2023) .............................................................9, 12, 13

*ACLU/Eastern Mo. V. Miller*,
803 S.W.2d 592 (Mo. 1991) (en banc) ..................................................................................24

*Alpha Pro Tech, Inc. v. VWR Int'l, LLC*,
2017 WL 3671264 (E.D. Pa. Aug. 23, 2017) .........................................................................24

*An v. Despins*,
2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)..........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) .................................................................................................25

*Barker v. Nestle Purina PetCare Co.*,
601 F. Supp. 3d 464 (E.D. Mo. 2022).....................................................................................14

*Bell v. Annie's Inc.*,
673 F.Supp.3d 993 (E.D. Mo. May 18, 2023) ........................................................................12

*Buckler v. United States*,
919 F.3d 1038 (8th Cir. 2019) .................................................................................................8

*Budach v. NIBCO, Inc.*,
2015 WL 3853298 (W.D. Mo. June 22, 2015) .........................................................................9

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) .............................................................................................8

*Carlsen v. Gamestop*,
833 F.3d 903 (8th Cir. 2016) ...................................................................................................8

*Colbert v. Millenia Hous. Mgmt.*,
2024 WL 1018540 (W.D. Mo. Mar. 8, 2024)..........................................................................22

Case 2:26-cv-04039-WJE    Document 23-1    Filed 04/13/26    Page 4 of 36

*Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*,
2018 WL 1440606 (W.D. Ky. Mar. 22, 2018) ...................................................................20

*Cox v. Valley Hope Ass'n*,
2016 WL 4680165 (W.D. Mo. Sept. 6, 2016) ....................................................................8

*Cregan v. Mortgage One Corp.*,
2016 WL 3072395 (E.D. Mo. June 1, 2016) ....................................................................24

*In re Crop Inputs Antitrust Litig.*,
-- F.4th --, 2026 WL 924130 (8th Cir. Apr. 6, 2026).......................................................25

*Crown Foods, Inc. v. Mercedes-Benz USA, LLC*,
2022 WL 17338083 (E.D. Mo. Nov. 30, 2022)................................................................13

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
756 F.3d 917 (6th Cir. 2014) ..........................................................................................24

*Dedloff v. Whole Foods Mkt. Grp., Inc.*,
688 F. Supp. 3d 893 (E.D. Mo. 2023)..............................................................................12

*Duncan v. Belmont Univ.*,
2025 WL 359326 (W.D. Mo. Jan. 31, 2025))....................................................................7

*Ellis v. Nike USA, Inc.*,
2024 WL 1344805 (E.D. Mo. Mar. 28, 2024) ..................................................................11

*Fellin v. Henkle*,
2024 WL 2769688 (E.D. Mo. May 30, 2024) .............................................................10, 12

*Fleming v. Bank of Am.*,
2013 WL 5719105 (W.D. Mo. Oct. 21, 2013)...................................................................14

*In re Folgers Coffee, Marketing Litig.*,
2023 WL 9744300 (W.D. Mo. July 24, 2023)...................................................................16

*Freeman v. Quicken Loans, Inc.*,
566 U.S 624 (2012)..........................................................................................................21

*Galiano v. Fid. Nat. Title Ins. Co.*,
684 F.3d 309 (2d Cir. 2012).......................................................................................17, 21

*Gallagher v. Santander Consumer USA, Inc.*,
125 F.4th 865 (8th Cir. 2025) ...........................................................................................8

*Gedalia v. Whole Foods Market Servs., Inc.*,
53 F.Supp.3d 943 (S.D. Tex. Sep. 30, 2014) ..................................................................24

Case 2:26-cv-04039-WJE     Document 23-1     Filed 04/13/26     Page 5 of 36

*Gibbs v. PrimeLending,*
2012 WL 994312 (E.D. Ark. Mar. 23, 2012) ........................................................22

*Gomez v. Wells Fargo Bank, N.A.,*
676 F.3d 655 (8th Cir. 2012) ...............................................................................20

*Hamilton v. Palm,*
621 F.3d 816 (8th Cir. 2010) .................................................................................7

*Hawse v. Page,*
7 F.4th 685 (8th Cir. 2021) ....................................................................................7

*Hennessey v. Gap, Inc.,*
86 F.4th 823 (8th Cir. 2023) ...........................................................................13, 14

*Howard v. Turnbull,*
316 S.W.3d 431 (Mo. Ct. App. 2010).................................................................24

*Huffman v. Credit Union of Texas,*
2013 WL 1121268 (W.D. Mo. Mar. 18, 2013).....................................................23

*Jackson v. Wells Fargo Bank, N.A.,*
2013 WL 5945732 (W.D. Pa. Nov. 6, 2013) ........................................................24

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab.
Litig.,*
903 F.3d 278 (3d Cir. 2018)...................................................................................8

*U.S. ex rel. Josh v. St. Luke's Hosp., Inc.,*
441 F.3d 552 (8th Cir. 2006) ...............................................................................23

*LaCrue v. Vexus Fiber, LLC,*
2026 WL 281138 (W.D. Mo. Feb. 3, 2026) ..........................................................14

*Limo Land, Inc. v. Metro Worldwide, LLC,*
2021 WL 950663 (W.D. Mo. Mar. 12, 2021).......................................................25

*Little Gem Life Scis., LLC v. Orphan Med., Inc.,*
537 F.3d 913 (8th Cir. 2008) ...............................................................................16

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024).............................................................................................19

*McNaught v. Nolen,*
76 F.4th 764 (8th Cir. 2023) ..................................................................................9

*Mills v. City of Grand Forks,*
614 F.3d 495 (8th Cir. 2010) .................................................................................7

v

*Missourians for Fiscal Accountability v. Klahr*,
830 F.3d 789 (8th Cir. 2016) ................................................................................4

*Moses.com, Inc. v. Comprehensive Software Sys.*,
406 F.3d 1052 (8th Cir. 2005) ..............................................................................6

*Muller v. Blue Diamond Growers*,
683 F. Supp. 3d 933 (E.D. Mo. 2023)..................................................................12

*Parker v. HSBC Mortg. Servs., Inc.*,
2017 WL 513050 (E.D. Mo. Feb. 8, 2017)...........................................................22

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
839 F.3d 1 (D.C. Cir. 2016)................................................................................20

*Pointer v. St. Louis Univ.*,
2024 WL 4039804 (E.D. Mo. Sept. 4, 2024).......................................................16

*Ripplinger v. Amoco Oil Co.*,
916 F.2d 441 (8th Cir. 1990) ..............................................................................23

*S&H Farm Supply, Inc. v. Bad Boy, Inc.*,
25 F.4th 541 (8th Cir. 2022) ..............................................................................21

*Sally v. H&M Hennes & Mauritz LP*,
2026 WL 472764 (E.D. Mo. Feb. 19, 2026).........................................................11

*In re: Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg., Sales Pracs., & Prods.*
*Liab. Litig.*,
2023 WL 5670166 (W.D. Mo. July 18, 2023).......................................................23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................8

*Stanford v. Samsung Elecs. Am., Inc.*,
2025 WL 3724546 (W.D. Mo. July 1, 2025)....................................................13, 14

*Steger v. M&R Watson, LC*,
2023 WL 6918187 (E.D. Mo. Oct. 19, 2023).........................................................8

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012)..................................................................25

*Thompson v. Allergan USA, Inc.*,
993 F. Supp. 2d 1007 (E.D. Mo. 2014)................................................................13

*United States v. Gannon*,
684 F.2d 433 (7th Cir. 1981) (*en banc*) ..............................................................21

*United States v. Wendt*,
    168 F.4th 1068 (8th Cir. 2026) ...................................................................................17

*Vitello v. Natrol, LLC*,
    50 F.4th 689 (8th Cir. 2022) .....................................................................................13

*White v. CTX Mortg., LLC*,
    2014 WL 1806705 (W.D. Mo. May 7, 2014) ....................................................22, 23

*Williams v. First Nat. Bank of St. Louis*,
    2014 WL 5800199 (E.D. Mo. Nov. 7, 2014) .......................................................7, 24

*Williams v. United Tech. Corp.*,
    2015 WL 7738370 (W.D. Mo. Nov. 30, 2015)........................................................12

*Woodruff v. Jefferson City Area Young Men's Christian Ass'n*,
    2018 WL 576857 (W.D. Mo. Jan. 27, 2018) ............................................................7

*Wright v. Oasis Legal Fin., LLC*,
    2020 WL 1433645 (E.D. Mo. Mar. 24, 2020) .........................................................24

**Statutes**

7 Pa. Cons. Stat. § 6111 ....................................................................................................15

7 Tex. Admin. Code § 56.100(a) .......................................................................................15

12 U.S.C. § 2607................................................................................................... *passim*

12 U.S.C. § 2614..............................................................................................................22

38 U.S.C. § 3702.................................................................................................................3

Mo. Rev. Stat. § 407.020 ....................................................................................... *passim*

Mo. Rev. Stat. § 407.025 ....................................................................................... *passim*

Tenn. Code Ann. § 45-13-301(a)......................................................................................15

**Other Authorities**

12 C.F.R. § 1024.14(d) .....................................................................................................20

12 C.F.R. § 1024.14(f)(1) ............................................................................................18, 19

Fed. R. Civ. P. 9...................................................................................................... *passim*

Fed. R. Civ. P. 12.................................................................................................... *passim*

Fed. R. Evid. 201 ...............................................................................................................16

Case 2:26-cv-04039-WJE    Document 23-1    Filed 04/13/26    Page 9 of 36

## INTRODUCTION

A home loan guaranteed by the United States Department of Veterans Affairs ("VA") has provided access to homeownership since 1944. Veterans United Home Loans ("VUHL") has helped veterans and military families use this financial benefit that they earned through service to the nation more than a half million times since 2002. VUHL has focused on educating veterans and the broader marketplace about this benefit and providing an exceptional borrower experience. In 2008, VUHL launched Veterans United Realty ("VUR"), its affiliated real estate brokerage and realty network, for real estate agents who provide superior service and understand the VA loan process. The result is a sizable and informed resource for veterans and their families.

The Complaint gets almost nothing right about VUHL or VUR. In fact, it is fueled by "confidential" competitors and largely recycled from complaints filed against other large mortgage lenders. Plaintiffs allege violations of the Real Estate Settlement Procedures Act ("RESPA"), the Missouri Merchandising Practices Act ("MMPA"), and unjust enrichment. Each claim is based on generic, conclusory, and contradictory allegations. To be crystal clear: VUHL and VUR have never held themselves out as the VA or any other government agency. Never.

Plaintiffs offer no specific allegations about any harm they have suffered, such as any fee they actually paid, the terms of their loan, or the terms they contend they would have obtained in the absence of the challenged practices. Conclusory allegations that they "overpaid" and bare allegations of statutory violations are not sufficient to allege the concrete and particularized injury required to establish Article III standing.

Plaintiffs' claims also fail on their merits. Their MMPA claims should be dismissed because they do not allege any deceptive or fraudulent act, much less with the particularity required by Rule 9(b). Indeed, the website landing pages Plaintiffs rely on to support their assertion that Defendants pretend to be affiliated with the VA state explicitly and prominently that they are **not affiliated with any government agency**. Plaintiffs also do not plead any ascertainable loss, and their claims are separately barred because they are based on transactions that occurred outside of Missouri.

1

The RESPA Section 2607(a) and Section 2607(b) claims also should be dismissed because Section 2607(c) exempts cooperative brokerage and referral arrangements. Plaintiffs suggest that the safe harbor does not apply because VUR is a "shell company" with no licensed agents. The reality is, however, that VUR employs hundreds of licensed agents, and RESPA explicitly permits real estate brokers and agents to refer consumers to each other and split real estate commissions. Even if these claims do not fail for this simple reason, they still must be dismissed because Plaintiffs fail to adequately plead the statutory requirements necessary for liability, including any "referral," "thing of value," or any "charge" paid by the Plaintiffs. The Complaint alleges that VUR "steered" Plaintiff Peyton—but not the other Plaintiffs—to VUHL, but "steering" is not a "thing of value" within the meaning of the statute, and the allegation cannot be squared with the Complaint's other allegations that Peyton started with VUHL in any event. The RESPA claims brought by Plaintiffs Peyton and Easter are also barred by RESPA's one-year limitations period.

The unjust enrichment claims should be dismissed because they fail to allege that they conferred any benefit on any Defendants; they seek recovery for conduct covered by a contract; and their claims are derivative of their deficient RESPA claims.

Finally, Plaintiffs cannot state any of the claims they advance by relying on allegations about what unspecified "Defendants" did, and dismissal is warranted by the group pleading deficiencies that pervade the Complaint.

For all of these reasons, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### A.  VA Loans Are a Valuable Home Loan Benefit.

A VA loan is a mortgage partly guaranteed by the VA[1] but originated by private lenders to eligible veterans, active-duty personnel, surviving spouses, and others. Compl. ¶¶ 1, 30, 31. Among other benefits, borrowers are not required to make a down payment or pay for private

---

[1] Plaintiffs mistakenly refer to the VA as the "U.S. Veterans Administration," a title that ceased to exist when it was elevated to cabinet-level status and renamed the Department of Veterans Affairs in 1988. *See* Department of Veterans Affairs Act, Pub. L. No. 100-527, 102 Stat. 2635 (1988).

2

mortgage insurance. *See id.* ¶¶ 30-31 & n.6 (citing U.S. Dep't of Veterans Affairs, *VA Home Loans*, https://benefits.va.gov/homeloans/ (last visited Apr. 13, 2026)). Lenders that the VA has approved to be a "VA lender" are eligible to originate VA loans. *Id.*; 38 U.S.C. § 3702(d). Once approved, a VA lender must comply with VA policies, procedures, and underwriting guidelines that the VA publishes in its Lender's Handbook.[2] VA lenders like VUHL are subject to supervision by the VA, other federal regulators, and regulators in all 50 states and the District of Columbia. They undergo regular reviews, including loan file reviews to ensure compliant operations.[3]

Notwithstanding that "[f]or many Veterans, VA's home loan program is the most advantageous mortgage option available," VA loans are underutilized because of a "stigma," being "mischaracterized as unnecessary burdens or disadvantages" by many agents and sellers.[4]

**B.     VUHL Has Become the "#1 VA Lender" By Making VA Loans Accessible.**

VUHL is the trade name of Defendant Mortgage Research Center, LLC.[5] VUHL employs nearly 4,500 people, including more than 3,400 people at its headquarters in Columbia, Missouri. Aggregate data available to the public on the VA website, which "are provided as resources for VA lenders," reflects that VUHL is the nation's "#1 VA Lender" (Compl. ¶ 32) because it has originated

---

[2] The VA maintains its Lender's Handbook online. *See, e.g.,* Compl. ¶ 31 & n.7 (includes a link to Chapter 1 of the Lender's Handbook, which refers multiple times to "VA lenders").

[3]     *See, e.g.,* U.S. Dep't of Veterans Affairs*, VA Home Loans*, https://www.benefits.va.gov/homeloans/lenders_lgy_monitor.asp (last visited Apr. 13, 2024).

[4] *Hearing Before the H. Comm. On Veterans Affs, Subcomm. on Econ. Opportunity*, 117th Cong. 1 (2021) (statement of John E. Bell, Acting Exec. Dir., Loan Guaranty Serv., Veterans Benefits Admin., Dep't of Veterans Affs) at 1; *Sink or Swim? A Deep Dive into the Current State of VA's Home Loan Program in a Competitive Market: Hearing Before the Subcomm. on Econ. Opportunity of the H. Comm. on Veterans' Affs.*, 118th Cong. 27-33 (2024) (statement of John E. Bell, Exec. Dir., Loan Guaranty Serv., Veterans Benefits Admin., Dep't of Veterans Affs.) at 27. This stigma is not only among sellers and their agents but also buyers' agents: one study revealed that 12% of buyers' agent respondents admit to encouraging veterans not to use a VA loan. National Association of REALTORS, *2021 Loan Type Survey*, https://cms.nar.realtor/sites/default/files/documents/ 2021-loan-type-survey-06-08-2021.pdf (last visited Apr. 13, 2026).

[5] The Complaint names both VUHL and Mortgage Research Center, LLC, but they are not separate entities. Compl. ¶ 15.

3

more VA purchase loans than any other VA lender in every year since 2016.[6]

Knowledge gaps and misconceptions in the marketplace and within the veteran and military community spurred VUHL to focus on VA lending. The company specialized in the origination and underwriting of VA loans, and it worked to educate the market about the value of VA loans and to dispel stubborn perceptions that they are less desirable than conventional loans. It created the Lighthouse Program, which has provided guidance on credit issues and financial well-being to over 100,000 homebuyers who did not initially qualify so that they could become credit-eligible for a mortgage, at no cost or obligation. It built an accessible online mortgage platform and other systems specifically for veteran and military families to help them navigate the process in ways that best serve their needs.

Because prospective buyers hit roadblocks without agents educated about VA loans, VUHL formed a separate subsidiary named Realty Search Solutions Network, LLC,[7] which does business as Veterans United Realty ("VUR"). VUR is a real estate brokerage that employs more than 200 licensed real estate agents in Missouri.[8] Compl. ¶ 39. VUHL borrowers who do not have a local agent have the option to be paired with a network agent in their area. *Id.* VUR provides training

---

[6] *See* U.S. Dep't of Veterans Affs., Veterans Benefits Admin., *VA Home Loans—Lender Statistics*, https://www.benefits.va.gov/HOMELOANS/documents/lender-statistics/fy06-thru-fy25-lender-loan-volume-analysis.xlsx (last updated Mar. 18, 2026) (most "Loans Guaranteed" in "Purchase" tab from FY 2016-present); *see also Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (court may take judicial notice of government websites).

[7] Plaintiffs name Defendant Realty Search Solutions, LLC as the legal entity corresponding to Veterans United Realty. Compl. ¶ 17. But a different entity, Realty Search Solutions Network, LLC, which also does business as Veterans United Realty ("VUR"), is the legal entity that operates the VUR network, as evidenced by the VUR "AgentDash" website cited by Plaintiffs (Compl. ¶¶ 42-43 & n.14). AgentDash, Our Network Expectations, https://help.myagentdash.com/en/articles/3902803-our-network-expectations (last visited Mar. 27, 2026) (disclosing, at bottom of page, "Realty Search Solutions Network, LLC . . . .Not affiliated with any government agency including the VA . . . Licensed Real Estate Brokerage"). Defendant Realty Search Solutions, LLC, also a real estate brokerage, is a subsidiary of VUR and acts as its marketing arm ("VUR Marketing"). A search for "Veterans United Realty" on the Missouri Secretary of State website shows both entities use the name and documents available on that website confirm this. *See* Ex. A, Registrations of Fictious Name ("Veterans United Realty" used by both "Realty Search Solutions Network, LLC" and "Realty Search Solutions, LLC").

[8] Ex. B (Missouri Division of Professional Registration, Licensee Search Results for "Realty Search Solutions Network LLC").

to network agents, including with respect to VA loans, so that they can better serve veterans in their communities. *Id.* ¶¶ 36, 39. It also provides network agents with access to its proprietary app called AgentDash, *id.* ¶ 42, which helps clients and agents alike stay organized throughout the homebuying process.

### C. VUHL Discloses that It Is Not Affiliated with the Government.

In almost all cases, the VA does not make loans. It works with approved lenders, which it refers to as "VA lenders." VA lenders originate VA loans.[9]

Neither VUHL nor any other VA lender is affiliated with the VA. VUHL says this clearly, repeatedly, and across multiple forms of communication. For example, the VUHL website contains two such disclosures. The top of its website's landing page disclaims affiliation with any government agency, and the bottom contains a footer that states, "Not endorsed or sponsored by the Dept. of Veterans Affairs or any government agency." Compl. ¶¶ 2, 32; https://www.veteransunited.com (last visited Apr. 13, 2026). The Complaint purports to include screenshots of the header disclaimer, but Plaintiffs distorted and manipulated the image to appear blurry and smaller than it actually presents. *Id.* The screenshot reproduced in Exhibit C is an accurate reproduction that shows the true dimensions of the disclosure as it appears to a website visitor on a standard laptop. *See id.* ¶ 2; Ex. C.

### D. This Lawsuit.

Plaintiffs Peyton, Zahn, and Easter brought this lawsuit against VUHL and Mortgage Research Center, LLC—which, as explained above, are the same entity, *see supra* at n.5. They also named Realty Search Solutions, LLC as a defendant (referred to herein as "VUR Marketing"). However, the legal entity associated with VUR that has a network of thousands of local agents is Realty Search Solutions Network, LLC (which is not named as a defendant, referred to herein as "VUR"), *see supra* at n.7.

---

[9] *See, e.g.*, https://www.benefits.va.gov/homeloans/lenders.asp (last visited Apr. 13, 2026) (identifying "resources for VA lenders").

The Complaint has just one paragraph about each Plaintiff's individual experiences, which contain the following allegations:

**Plaintiff Peyton.** Plaintiff Peyton alleges that he "used [VUHL] to purchase a property" in his hometown, "Gallatin, Tennessee" on "May 17, 2022." Compl. ¶ 12. He "initially used [VUHL] to get preapproval," then "[VUHL] referred him to a Veterans United associated real estate agent to purchase the property." *Id.* He allegedly "believed that Veterans United was part of the VA" in part because of emails emphasizing a "Veterans affiliation." *Id.* VUHL's emails disclose that VUHL is not the VA just like the website does. For example, the exemplar email attached as Ex. D, which he received on April 18, 2022, states that "Veterans United Home Loans is not endorsed or sponsored by the Dept. of Veterans Affairs or any government agency" and "Does not reflect DOD endorsements."[10]

**Plaintiff Zahn.** Plaintiff Zahn alleges that she "used Veterans United Home Loans to purchase a property" in her hometown, "Bedford, Texas," on "August 15, 2025." Compl. ¶ 13. She alleges that she "assumed, based on the name, that [VUHL] would prioritize her interests and look out for her." *Id.* She does not allege that she believed VUHL was the VA or that she used a VUR agent to purchase the property. *Id.*

**Plaintiff Easter.** Plaintiff Easter alleges he "used [VUHL] to purchase a property" in his hometown, "Lansdale, Pennsylvania" on "September 30, 2022." *Id.* ¶ 14. He alleges he "used [VUHL] because he assumed it was part of the VA," but he does not say what VUHL did to create this impression. *Id.* He does not allege that he used a VUR agent to purchase the property. *Id.*

Each Plaintiff includes the same copy-and-paste allegation that they "overpaid for [their] loan as a result of Defendants' unfair business practices, and the preferred agents' payments of 35% of their commission back to Veterans United." *Id.* ¶¶ 12-14. No further details about their loan terms, what other loans they were eligible for, or to which entity the 35% fee was paid, are

---

[10] This email is incorporated by reference into the Complaint. *See Moses.com, Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (holding that courts may consider the complaint as well as documents incorporated into the complaint by reference in deciding a 12(b)(6) motion).

provided.  Based on these allegations, Plaintiffs allege that Defendants violated Section 2607(b) of the Real Estate Practices Act ("RESPA"), the Missouri Merchandising Practices Act ("MMPA"), and were unjustly enriched.  *Id.* ¶¶ 11-14, 95, 116, 125.  Plaintiff Peyton also alleges that Defendants engaged in "illegal steering" and violated Section 2607(a) of RESPA.  *Id.* ¶¶ 12, 81.

## LEGAL STANDARD

To survive a Rule 12(b)(1) "motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing."  *Hawse v. Page*, 7 F.4th 685, 688–89 (8th Cir. 2021).

To survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  In ruling on a motion to dismiss, "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Woodruff v. Jefferson City Area Young Men's Christian Ass'n*, 2018 WL 576857, at *2 (W.D. Mo. Jan. 27, 2018) (Epps, J.) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).  "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Duncan v. Belmont Univ.*, 2025 WL 359326, at *2 (W.D. Mo. Jan. 31, 2025) (Epps, J.), *aff'd,* 2025 WL 2494707 (8th Cir. May 13, 2025) (quoting *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010)).  "Courts need not accept as true factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice."  *Williams v. First Nat. Bank of St. Louis*, 2014 WL 5800199, at *4 (E.D. Mo. Nov. 7, 2014) (cleaned up).  And "[c]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Woodruff*, 2018 WL 576857, at *2 (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING.

To have Article III standing to sue, Plaintiffs must have: (1) "suffered an injury in fact," (2) "fairly traceable" to the conduct challenged in the Complaint, (3) and redressable by a favorable

7

judicial opinion. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (cleaned up). Simply suing to assert a violation of a statute is not enough. *Id.* at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Rather, the injury "must actually exist" and must have "affect[ed] the plaintiff in a personal and individual way." *Id.* at 339-40 (cleaned up); *see also Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 867-70 (8th Cir. 2025) (vacating district court judgment because "[m]issing is the pecuniary harm" from the alleged statutory violation and, "[w]ithout a financial injury," there is no concrete harm to establish standing). A plaintiff "bears the burden of showing that [she] has standing for each type of relief sought." *Steger v. M&R Watson, LC*, 2023 WL 6918187, at *2 (E.D. Mo. Oct. 19, 2023) (citing *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019)).

Here, Plaintiffs each make the same conclusory allegation that they "overpaid" for their loans. Compl. ¶¶ 12-14. But they do not allege what they *did* pay, the amount of any purported overpayment, or that they qualified for a loan offered by another VA lender on more favorable terms. A "bare allegation of overpayment" is not sufficient to establish standing. *Cox v. Valley Hope Ass'n*, 2016 WL 4680165, at *4 (W.D. Mo. Sept. 6, 2016) (dismissing case because bare allegation of "overpayment" not sufficient to establish standing in a data breach case). Plaintiffs must "do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (affirming dismissal for lack of Article III standing where plaintiff "fail[ed] to allege that the purchase provided her with an economic benefit worth less than the economic benefit for which she bargained"); *see also Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (affirming dismissal for lack of Article III standing where plaintiffs "have only made conclusory allegations that their cars are worth less"); *Carlsen v. Gamestop*, 833 F.3d 903, 909 (8th Cir. 2016) (finding standing based on allegations that plaintiff paid $14.99 for subscription that was worth less than promised due to a compromised privacy protection).

In place of allegations regarding concrete financial or other harm, Plaintiffs rely on generalized and conclusory allegations about mortgage marketplace trends in two paragraphs of the Complaint. *See* Compl. ¶¶ 67-68. These paragraphs have nothing to do with the Defendants in this case and recite claims about different and entirely unrelated entities—Zillow and Redfin—made on the website of a magazine called "Jacobin." Plaintiffs blandly assert that "the description of the conduct applies equally to Defendants." *Id.* ¶ 67. Plainly, such "broad generalities" about completely unrelated entities do not plausibly establish that Defendants engaged in the same practices, much less caused an injury in fact to Plaintiffs. *McNaught v. Nolen*, 76 F.4th 764, 770 (8th Cir. 2023) (affirming dismissal for lack of Article III standing).

## II. PLAINTIFFS FAIL TO STATE AN MMPA CLAIM.

Plaintiffs accuse Defendants of engaging in deceptive conduct in violation of the MMPA. To establish a violation under the MMPA, Plaintiffs must establish that they "(1) purchased merchandise from [the defendant]; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the" MMPA. *Abbott v. Golden Grain Co.*, 677 F.Supp.3d 940, 945 (E.D. Mo. June 13, 2023). Plaintiffs' claims should be dismissed for two independent reasons: Plaintiffs have not alleged any MMPA violation, and they have not—and cannot—allege that their real estate transactions occurred in Missouri, as they must for the MMPA to apply.

### A. Plaintiffs Do Not Allege Deceptive Conduct Required to Plead Their Claims.

To allege that Defendants violated the MMPA by engaging in "unfair and deceptive" conduct, Compl. ¶ 122, Plaintiffs must satisfy Rule 9(b)'s heightened pleading requirements. *See Budach v. NIBCO, Inc.*, 2015 WL 3853298, at *6 (W.D. Mo. June 22, 2015) ("The heightened pleading requirements of Rule 9(b) apply to a claim under a state consumer fraud statute, such as the MMPA, just as they do to common law fraud claims.").

Plaintiffs have not met their burden. As detailed below, their own allegations confirm that Defendants have not used their website and name to deceive consumers, and no "reasonable consumer" would believe that Defendants are affiliated with the government "in light of all

9

circumstances" and multiple disclosures that Defendants are *not* affiliated with the government. RSMo Section 407.025(1)(2)(a). Their conclusory allegations that VUR steered clients to VUHL and failed to disclose a 35% commission (of the 3% agent commission) likewise do not plead an MMPA claim with the particularity required by Rule 9(b).

### 1. Plaintiffs' Complaint Confirms that Defendants' Brand Names and Websites Are Not Deceptive.

Plaintiffs' allegation that "Defendants … used its [sic] name and website to present itself [sic] as being part of or affiliated with the VA" (Compl. ¶ 122) does not adequately plead a deceptive act as required to state an MMPA claim. Their allegation that the website is misleading is contradicted by the Complaint's acknowledgement that the website *expressly states* that VUHL is "Not affiliated with any government agency." *Id.* ¶ 2; *see also id.* ¶ 32 ("Not a government agency."). Similarly, Peyton alleges he believed Defendants were affiliated with the VA based on "emails and signature blocks," but, as the exemplar email reflects, VUHL's emails likewise state that "Veterans United Home Loans is not endorsed or sponsored by the Dept. of Veterans Affairs or any government agency" and "Does not reflect DOD endorsements." *Supra* Background, Section D; Ex. D. Plaintiffs cannot allege that Defendants misled customers into believing they were the VA based on a website and emails that explicitly disclosed the opposite. *See Fellin v. Henkle*, 2024 WL 2769688, at *8 (E.D. Mo. May 30, 2024) (dismissing MMPA claim where purportedly misleading statement was dispelled by clear disclaimer on product).

Because Plaintiffs cannot dispute that Defendants repeatedly disclose that they are not affiliated with the government, Plaintiffs attempt to distract the Court with baseless criticisms of the format of those disclosures.[11] The Complaint includes distorted images of the website, suggesting that the statements are blurred and less conspicuous than they actually appear to a website visitor. *See supra* Background, Section C; Ex. C. But the reality is that the disclosure is

---

[11] Plaintiffs' lawyers criticize Veterans United for using "light blue lettering" on a dark blue background, yet they use light gray lettering on a dark gray background for disclosures on their own website. *See* Hagens Berman, *Home Page*, https://www.hbsslaw.com/ (last visited Apr. 13, 2026).

prominently displayed at the top of the website.  Compl. ¶ 32; *see* Ex. C.  And even Plaintiffs' distorted reproduction of the website image clearly states:  "See why more Veteran homebuyers *choose* Veterans United than any other VA lender."  Compl. ¶ 32 (emphasis added).  It is impossible to imagine what "choice" Plaintiffs believe is implied if VUHL intended to mislead consumers into believing it was the government.

Plaintiffs also baselessly allege that the promotion that VUHL is "The Nation's #1 VA Lender" is misleading.  But both parts of that statement are demonstrably true, as the VA itself confirms.  On its website, the VA refers to lenders approved to originate VA loans as "VA lenders." *See supra* nn. 6, 9. VUHL is one listed VA lender.  The VA also provides "lender loan volume monthly reports," which show that VUHL consistently has the highest number of closings among VA lenders.  *Supra* n. 9.  Plaintiffs do not explain how this accurate statement could mislead consumers, particularly in light of VUHL's statement—on the same webpage—that it is not affiliated with the government.  Indeed, no Plaintiff actually alleges that they used VUHL because they thought it was the VA or affiliated with the VA based on the statements on Defendants' websites. Compl. ¶¶ 12-14.  Plaintiff Zahn does not even allege she thought Defendants were affiliated with the government at all.  *Id.* ¶ 13.  *See Ellis v. Nike USA, Inc.*, 2024 WL 1344805, at *4 (E.D. Mo. Mar. 28, 2024), a*ff'd*, 158 F.4th 932 (8th Cir. 2025) (dismissing MMPA claim with prejudice where "Plaintiff never once alleges what specific representations she saw"); *Sally v. H&M Hennes & Mauritz LP*, 2026 WL 472764, at *3 (E.D. Mo. Feb. 19, 2026) (dismissing MMPA in part because plaintiffs' "catchall pleading' that "never identifies what 'misrepresentations' he saw and relied on, or when he saw them" "fails to satisfy Rule 9(b)'s particularity requirement).  None of these conclusory and contradictory allegations plead that Defendants engaged in a deceptive act with the particularity required under Rule 9(b).

Plaintiffs' claims separately fail because it is not "likely" that a "reasonable consumer" would believe that Defendants were part of the VA.  "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  Mo. Rev. Stat. § 407.025(1).  Here, "[i]t is not

plausible that [Defendants'] trade name" and marketing, when considered in the "full context of" the companies' repeated disclosures that they are *not* affiliated with the government, "would likely cause a reasonable consumer" to believe they were affiliated with the government. *Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 942-43 (E.D. Mo. 2023) (dismissing MMPA claim that "Smokehouse" brand deceived plaintiff into believing almonds were smoked in a smokehouse where such belief was inconsistent with "the ingredients list on the back of the packaging, which includes 'natural hickory smoke flavor.'"). Courts uniformly dismiss MMPA claims where the defendant expressly discloses the information the plaintiffs alleged was concealed. *See Bell v. Annie's Inc.,* 673 F.Supp.3d 993, 999 (E.D. Mo. May 18, 2023) (dismissing MMPA claim because "[u]ndeniably, the MMPA itself recognizes that reasonable consumers read product labels and packaging"); *Dedloff v. Whole Foods Mkt. Grp., Inc.*, 688 F. Supp. 3d 893, 902 (E.D. Mo. 2023) (same); *Abbott*, 677 F. Supp. 3d at 949 (same); *Fellin*, 2024 WL 2769688 at *6-7 (same); *Williams v. United Tech. Corp.*, 2015 WL 7738370, at *9 (W.D. Mo. Nov. 30, 2015) (no misrepresentation based claim where defendant disclosed warranty was a "limited warranty" even "[t]hough consumers may not have taken it upon themselves to review the specific restrictions associated with the warranty"). The Court should do the same here.

### 2. Plaintiffs' Allegations of "Steering" and Undisclosed Fees Fail to Adequately Plead Deceptive Conduct.

Plaintiffs' other allegations of deceptive conduct likewise are not adequately pleaded. Although the Complaint contains conclusory allegations that VUR "steered clients to use VUHL, despite knowing it offered" more expensive loans and failed to disclose the 35% referral fees, Plaintiffs' actual allegations are scant. Compl. ¶ 122. None of the Plaintiffs allege any facts to support that any agents steered *them* to use VUHL. Indeed, Plaintiffs Easter and Zahn do not even allege that they used a VUR real estate agent, much less that the agent "steered" them or paid a 35% fee to VUR. *Id.* ¶ 13-14. Plaintiff Peyton alleges that he used a VUR agent, but he also alleges that he was paired with a VUR network agent *after* he got pre-approved by VUHL. *Id.*

¶ 12. Therefore, the Complaint cannot support an inference that the agent steered him to VUHL when he started with VUHL in the first place.

These threadbare allegations fail to allege deceptive conduct with the particularity required by Rule 9(b), and Plaintiffs' MMPA claims should be dismissed. *See Crown Foods, Inc. v. Mercedes-Benz USA, LLC,* 2022 WL 17338083, at *5 (E.D. Mo. Nov. 30, 2022) (dismissing MMPA claim because "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy" Rule 9(b)).

**B.     Plaintiffs Have Not Alleged an Ascertainable Loss.**

Even if Plaintiffs had alleged deceptive conduct, they still would not plead a claim under the MMPA because they have not alleged with particularity that they "suffered an ascertainable loss of money or property." *See Abbott*, 677 F.Supp.3d 940, 945 (E.D. Mo. June 13, 2023). "Missouri courts generally apply the common-law 'benefit of the bargain' rule to determine whether an MMPA plaintiff has suffered an ascertainable loss." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (citing *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022)). "The 'benefit of the bargain' rule awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received." *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022) (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014). To plead an ascertainable loss for an MMPA claim, a plaintiff must allege "that [defendant] represented the [product] in a way that made it appear to have more value than it actually did." *Stanford v. Samsung Elecs. Am., Inc.*, 2025 WL 3724546, at *3 (W.D. Mo. July 1, 2025).

Plaintiffs have not met this high bar of pleading an ascertainable loss. They allege no facts supporting that VUHL "represented the [mortgage] as more valuable than it actually was." *Stanford*, 2025 WL 3724546 at *3. To the contrary, Plaintiffs received VA-guaranteed loans on the terms and pricing disclosed to them—"exactly what they bargained for"—and they "cannot plausibly plead otherwise." *Abbott*, 677 F. Supp. 3d at 952 (dismissing MMPA claim where no ascertainable loss alleged). Vague, copy-and-paste allegations that they "overpaid for [their]

13

loan[s]," Compl. ¶¶ 12-14, are irrelevant in the context of the MMPA absent allegations that VUHL misrepresented their value. *See Stanford*, 2025 WL 3724546 at \*3.

Even if they were adequate, Plaintiffs' conclusory claims still do not allege an ascertainable loss. The Complaint "makes no attempt to identify any specific instances of overpayment, when they occurred, how much was paid, which entity demanded the payment, or to which entity the payments were made." *Fleming v. Bank of Am.*, 2013 WL 5719105, at \*4 (W.D. Mo. Oct. 21, 2013). In particular, Plaintiffs do not allege what they *did* pay or that they qualified for a loan offered by another VA lender on more favorable terms. Plaintiffs do not even allege that they used an agent who paid a 35% commission. In short, they do not "provide any factual allegations other than the bare assertion that [they] overpaid." *Id.* That is not enough to plead an ascertainable loss. *See Stanford*, 2025 WL 3724546, at \*4 (W.D. Mo. July 1, 2025) (dismissing MMPA claim where plaintiff failed to plead that absent defendant's conduct he "would not have purchased" product or "bought it at a lower price"); *Hennessey*, 86 F.4th at 830 (affirming dismissal where plaintiff "failed to allege ascertainable loss with the specificity Rule 9(b) requires.").

### C. Plaintiffs Have Not Alleged a Transaction in Missouri.

The MMPA only prohibits practices "in connection with the sale or advertisement of any merchandise . . . in or from the state of Missouri." Mo. Rev. Stat. § 407.020(1). Where the plaintiff's transactions underlying the claim "take place outside of Missouri, the MMPA does not apply." *LaCrue v. Vexus Fiber, LLC*, 2026 WL 281138, at \*3 (W.D. Mo. Feb. 3, 2026). It is "not enough" that VUHL or VUR are headquartered in Missouri, because the applicability of the MMPA turns on where the challenged *transactions*, not the design or implementation of the challenged transactions, took place. *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469-470 (E.D. Mo. 2022) (dismissing MMPA claim asserted against Missouri-based company that designed, manufactured, distributed, labeled, advertised, and sold its products from its Missouri headquarters because transaction occurred out of state).

Plaintiffs are residents of Tennessee, Texas, and Pennsylvania, and they allege that they originated loans secured by property located in those states. *See* Compl. ¶¶ 12-14. In each of these

14

states, the mortgage licensing regime is keyed to the location of the collateral, not the location of the lender.  *See* Tenn. Code Ann. § 45-13-301(a); 7 Tex. Admin. Code § 56.100(a); 7 Pa. Cons. Stat. § 6111(a). Because the properties securing the loans are located in Tennessee, Texas, and Pennsylvania, Plaintiffs' transactions took place in those states.

## III.    PLAINTIFFS FAIL TO STATE A RESPA CLAIM.

All of Plaintiffs' RESPA claims should be dismissed for the simple reason that the safe harbor in RESPA Section 2607(c) for cooperative brokerage and referral arrangements applies to VUR and its network of agents.  Because VUR is a licensed real estate brokerage, the Complaint does nothing more than allege exchanges of leads and fees pursuant to a cooperative brokerage and referral arrangement expressly allowed by the statute.  Even assuming (incorrectly) that the safe harbor did not apply, Plaintiffs' claims must separately be dismissed because they fail to plausibly allege a RESPA claim, and Plaintiffs Peyton's and Easter's claims are time barred.

### A.    The RESPA Claims Are Barred by the Statute's Safe Harbor.

All of Plaintiffs' RESPA claims must be dismissed with prejudice because they are predicated on referrals made by VUR to real estate agents, which the Section 2607(c)(3) safe harbor categorically exempts from liability.

The Complaint alleges that VUR is a "real estate business" with "a broker in each state." Compl. ¶¶ 36, 39.  It alleges that VUR "referred leads to agents in its network" (*id.* ¶ 41), made clear that those real estate agents were "expected to steer leads back to" VUHL (*id.*), and if the real estate "agents close on the sale, they pay approximately 35% of the commission back to Veterans United" (*id.* ¶ 48).  Plaintiffs allege that this conduct includes both the exchange of a "referral" for a "thing of value" and a commission "split" or "kickback."  *Id.* ¶¶ 84, 110-11.

These claims fail as a matter of law because Section 2607(c)(3) states that "nothing" in the section "shall be construed as prohibiting . . . payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers." 12 U.S.C. § 2607(c). There are only two requirements for the safe harbor to apply:  (1) the parties must be "real estate agents [or] brokers" and (2) the "payments" being given or received must be "pursuant to

cooperative brokerage and referral arrangements" or "agreements between real estate agents and brokers." *Id.* Both requirements are satisfied here because both VUR and the network agents are real estate agents or brokerages performing real estate brokerage functions, and the referrals and payments are provided pursuant to an arrangement or agreement between them.

Plaintiffs' allegation that VUR is a "shell company" formed "simply to collect the 35% the network agents pay Veterans United" does not save their claim. *Id.* ¶¶ 6, 36. This conclusory allegation is contradicted by their own Complaint, which makes clear that VUR is *not* a "shell company." Plaintiffs allege VUR "has a broker in each state," "work[s] with 'over 5,000 network agents'," and "assist[s] [potential homebuyers] with [their] home search." *Id.* ¶ 39. Plaintiffs speculate that "this business *appears to* have been created only to evade restrictions on payments from brokers to non-brokers" because it "does not *appear* to have practicing real estate agents on staff." *Id.* ¶ 36 (emphasis added). But Plaintiffs cannot rely on allegations such as these that "rest on mere speculation." *Pointer v. St. Louis Univ.,* 2024 WL 4039804, at *1 (E.D. Mo. Sept. 4, 2024), *aff'd*, 2025 WL 817418 (8th Cir. Mar. 14, 2025).

Plaintiffs appear to have made this mistake because they sued the wrong defendant, and a search of the Missouri Division of Professional Registration website could have disabused Plaintiffs of their erroneous speculation. Plaintiffs sued Realty Search Solutions, LLC, instead of Realty Search Solutions Network, LLC, which is the entity that "work[s] with over 5,000 network agents" (Compl. ¶ 39) and has hundreds of licensed agents on staff. *See* Ex. B (search results reflecting that "Realty Search Solutions Network, LLC d/b/a Veterans United Realty employs more than 200 licensed agents in Missouri).[12]

Because VUR is a "real estate business" that works as a "real estate referral network," connecting potential homebuyers with "trusted affiliates"—real estate agents and brokers (Compl.

---

[12] The Court may consider this document, derived from a Missouri government website, because it is a "material[] that [is] part of the public record," *Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008), and because the facts it contains are "not subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot be questioned," *In re Folgers Coffee, Marketing Litig.*, 2023 WL 9744300, at *3 (W.D. Mo. July 24, 2023) (quoting Fed. R. Evid. 201(b)).

¶¶ 36, 39), the "cooperative brokerage" or "referral arrangement[] between real estate agents and brokers" exemption applies.  12 U.S.C. § 2607(c).  Their RESPA claims should be dismissed with prejudice on this basis alone.

**B.      Plaintiff Peyton Fails to Allege a RESPA Section 2607(a) Violation.**

Only Plaintiff Peyton asserts a violation of RESPA Section 2607(a), alleging that VUR violated Section 2607(a) by "steer[ing] the Veterans United-referred clients to use Veterans United for financing their home purchase."  Compl. ¶ 93.  The fact that the two other Plaintiffs do *not* allege that they used VUR agents or accuse VUR of violating Section 2607(a) is a significant and ironic concession, and refutes Plaintiffs' contention that that VUHL is always the beneficiary of VUR's purported steering practices and engages in conduct that undermines consumer choice.

In any event, to plead a violation of Section 2607(a), Plaintiff Peyton must plausibly allege that Defendants gave his network agent a "fee, kickback, or other thing of value, pursuant to any agreement or understanding, oral or otherwise," in exchange for the agent referring VUHL "business incident to or part of a real estate settlement service involving a federally related mortgage loan."  12 U.S.C. § 2607(a).

He has not done so.  He fails to allege (1) that his real estate agent "referred" him to use VUHL, (2) that his agent was provided "a thing of value" in exchange for any referral, or (3) that Veterans United and his real estate agent entered into any "agreement or understanding."  Each of these deficiencies is an independent basis to dismiss the Complaint's Section 2607(a) claim.

**1.      Plaintiff Peyton Could Not Be "Referred" to a Provider He Already Was Using.**

To state a claim under RESPA Section 2607(a), Plaintiffs must allege "an actual referral." *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 314 (2d Cir. 2012); 12 U.S.C. § 2607(a).  The statute does not define "referral," and a "court may rely on a dictionary definition to determine the plain meaning of [an] undefined word."  *United States v. Wendt*, 168 F.4th 1068, 1075 (8th Cir. 2026).  "Refer" was understood to mean "to send or direct for treatment, aid, information, [or] decision" around the time Section 8(a) was passed.  Ex. E, 2 WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 1907 (Phillip Babcock Gove & Merriam Webster Editorial Staff eds. 1981); *see also* 12 C.F.R. § 1024.14(f)(1) (requiring an "action directed to a person which has the effect of affirmatively influencing the selection…of a provider").

The Complaint broadly alleges that VUR agents engage in improper "referrals" insofar as "Veterans United-referred clients" then "use Veterans United for financing their home purchase." Compl. ¶ 93. But even Plaintiffs seem to know that this does not fit within theories of liability they have asserted in other pending cases, which involve allegations that agents must satisfy gatekeeping quotas for referring *new* borrowers to lenders in order to continue to receive referrals. Indeed, in an apparent copy-and-paste error, they assert in Count I that Defendants' "quotas" violate Section 2607(a), but they do not allege the existence of "quotas" anywhere in the Complaint—nor could they, because there are none. *See id.* ¶ 93.[13] *See An v. Despins*, 2023 WL 4931832, at *7 (S.D.N.Y. Aug. 2, 2023) (finding the "existence of similar litigation in other courts further supports the Court's finding that Plaintiffs filed this lawsuit in bad faith," especially given the "copy-and-paste nature of these numerous lawsuits"). And although Peyton alleges that "the agent did not tell" him that the agent "was required to steer" him to VUHL, (Compl. ¶ 12), he does not allege that his agent did so. Nor could he, given his allegation that he "initially used Veterans United Home Loans to get pre-approval." *Id.* In other words, Peyton *started* with VUHL and was then connected to a VUR associated agent. He could not have been referred to VUHL for financing because he already had chosen VUHL as his lender.

The Complaint asserts that it is enough that network agents abide by VUR guidelines that advise them to "reinforce existing relationships with the client's Loan Officer." Compl. ¶ 45.[14]

---

[13] Plaintiffs do not allege that Defendants have "quotas" anywhere in the Complaint. This stray reference appears to be recycled from substantially similar class action complaints filed by Plaintiffs' counsel in the Western District of Washington and Eastern District of Michigan. *See Taylor v. Zillow, Inc.*, 2:25-cv-01818-JLR (W.D. Wash.) (ECF 45 ¶¶ 110, 113, 157, 162); *Waller v. Rocket Companies Inc.*, 2:26-cv-10270-LVP-DRG (E.D. Mich.) (ECF 1 ¶ 77).

[14] *See* Veterans United Realty, *Agent Expectations*, https://www.veteransunitedrealty.com/assets/pdfs/agent-expectations.pdf. Plaintiffs do not attach the expectations document to the Complaint, but it is incorporated by reference.

The sub-bullets of that stated expectation flesh out what this means: the agent should advise the Loan Officer "if the client has financing questions or concerns" and assist "in obtaining all necessary client documentation." *Id.* That is all. Telling network agents that they should not advise clients about financing does not violate RESPA.[15] Even if it did, this allegation would not help Peyton's claim because he does not allege that his agent actually "reinforce[d]" his existing relationship with VUHL. *Id.* ¶ 12.

Instead, the Complaint relies on broad allegations of "steering." Indeed, there are more than three dozen references to "steering" in the Complaint, but RESPA Section 2607(a) does not use the word even once. Peyton relies on the definition of a "referral" in Regulation X to include "any oral or written action directed to a person which has the effect of affirmatively influencing the selection . . . of a provider of a settlement service." 12 C.F.R. § 1024.14(f)(1). There are at least three problems with Peyton's reliance on Regulation X. First, Peyton does not allege that VUR either "directed" any "action" at him or "affirmatively influenc[ed]" him to "select[]" VUHL, so the conduct as pled could not fall within Regulation X. *Id.* Second, even if he included that allegation, it is impossible to "affirmatively influence" a selection after the fact. VUHL connected Peyton to his real estate agent, and no agent connected Peyton to VUHL. *See* Compl. ¶ 12. Third, even if the Regulation X definition of a referral does include encouraging borrowers to talk to their existing loan officer (it does not), that interpretation is inconsistent with the text of the statute, and this Court should give no weight to it. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous." (emphasis added)); *3M Co. v. Comm'r of Internal Revenue*, 154 F.4th 574, 577 (8th Cir. 2025) (*Loper Bright* "frees courts to adopt the 'best reading of the statute': the one 'the court would have reached if no agency were involved.'") (quoting *Loper Bright*, 603 U.S. at 400). That "best reading," in line with the statutory text, the dictionary

---

[15] The federal Secure and Fair Enforcement for Mortgage Licensing Act, 12 U.S.C. § 5101, *et seq.*, prohibits individuals from engaging in the business of a residential mortgage loan originator without a license.

definition, and common sense, is that a person cannot be "referred" to a provider they are already using.

**2.      Hypothetical Future Leads Are Not a "Thing of Value."**

Even assuming Peyton had alleged a covered "referral" was made, Section 2607(a) only prohibits referrals if they are made in return for a "fee, kickback, or thing of value."  12 U.S.C. § 2607(a).  Peyton alleges that the "thing of value" is "the ability to continue receiving referrals and obtaining priority for future referrals."  Compl. ¶ 94.  That is not a viable theory under binding Eighth Circuit precedent, which requires a plaintiff to "allege more than . . . the *possibility* of [a thing of value] to sustain a claim under Section 2607(a)."  *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 663 (8th Cir. 2012) (affirming dismissal of RESPA claim on the pleadings because "possibility" of receiving benefit was insufficient to allege "thing of value").  In this Circuit, the mere possibility of a future referral is too speculative to be a "thing of value."

The Court should not ignore this binding precedent in favor of Plaintiffs' statement that potential future referrals represent an "opportunity to participate in a money-making program."  Compl. ¶ 83 (citing 12 C.F.R. § 1024.14(d)).  The text of the statute enumerates only tangible, non-speculative benefits as "things of value," and binding precedent confirms that alleging the "possibility of" or "potential" benefit is insufficient.  *See Gomez*, 676 F.3d at 663; *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2018 WL 1440606, at *3 (W.D. Ky. Mar. 22, 2018) (holding that a "*potential* benefit is insufficient to constitute a 'thing of value'").  Even if the Court were to disregard *Gomez* and conclude that hypothetical future leads could be a "thing of value," Regulation X prohibits only a referral in exchange for "special" variances from market terms or services.  12 C.F.R. § 1024.14(d).  Here, Plaintiffs allege that the commission paid is 35% in all cases, and they do not allege that this amount represents any such "unusual" departure.  *Id.;* Compl. ¶¶ 8, 9, 12-14, 35; *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted and opinion vacated in part, reinstated in relevant part by* 881 F.3d 75 (D.C. Cir. 2018) (Section 2607(c)(2) unquestionably exempts bona fide payments for goods and services

20

actually performed, so long as payments reflect reasonable market value, even if referrals also occur).

### 3. Plaintiffs Do Not Allege the Details of or Parties to Any Agreement.

A Section 2607(a) claim also requires that a "thing of value" be provided "pursuant to any agreement or understanding, oral or otherwise." 12 U.S.C. § 2607(a). It requires specific allegations regarding the "date, time, or amount" of the alleged violation, and these details are missing from the Complaint. *Galiano*, 684 F.3d at 315. An "agreement or understanding" requires "two culpable parties for a violation." *Freeman v. Quicken Loans, Inc.*, 566 U.S 624, 636 n.9 (2012); *see also S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 548 (8th Cir. 2022) ("A valid contract requires a mutuality of assent by the parties to the terms of the contract, *i.e.*, a meeting of the minds.") (citation omitted). Although Plaintiffs allege that VUR gives a thing of value pursuant to "an agreement or understanding that the real estate brokers and agents would refer real estate settlement business," Compl. ¶ 94, they do not identify a single counterparty to such an alleged agreement or understanding. Without a counterparty, they cannot allege that both "the payor and the recipient of the thing of value understand that the payment is in return *for the referral of business*." *United States v. Gannon*, 684 F.2d 433, 437-37 (7th Cir. 1981) (*en banc*) (emphasis in original).

### C. Plaintiffs' RESPA Section 2607(b) Fails Because They Do Not Plausibly Allege They Paid an Unlawful Commission Split.

Like Plaintiffs' Section 2607(a) claim, their Section 2607(b) claim must be dismissed because it is barred by the safe harbor. But even if it were not, it separately must be dismissed because Plaintiffs have not alleged they paid a "charge" in violation of RESPA.

Section 2607(b) requires that Plaintiffs allege a "charge" was "made [to] or received from" a consumer to a settlement service provider, and then that provider split the "charge" with a third party. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 631 (2012); 12 U.S.C. § 2607(b). Here, the Complaint alleges that "Veterans United preferred agents who received real estate commissions from the subject settlements acquiesced in splitting those commissions with the Defendants by

paying undisclosed 35% fees ('kickbacks') in connection with real estate settlements involving federally related mortgage loans." Compl. ¶ 108. But absent from that allegation is any "charge" that *Plaintiffs* paid because they do not allege that they paid any commission. *Id.* ¶¶ 12-14. Nor can they, because commissions are "paid by the seller," and each of the Plaintiffs was a buyer. *Id.* ¶¶ 24, 27 ("In typical real estate transactions, real estate brokers and agents receive compensation through commissions that are calculated as a percentage of a home's sale price," and "the seller broker pays the buyer broker a commission out of the total commission paid by the seller.").

Because "there are no allegations that [real estate agents] charged Plaintiffs a fee . . . Plaintiffs have failed to state a violation of § 2607(b)," and their claims must be dismissed. *Gibbs v. PrimeLending*, 2012 WL 994312, at *2 (E.D. Ark. Mar. 23, 2012) (dismissing Section 2607(b) with prejudice because complaint failed to allege plaintiffs paid any charge); *see also Parker v. HSBC Mortg. Servs., Inc.*, 2017 WL 513050, at *3 (E.D. Mo. Feb. 8, 2017) (dismissing RESPA claim where plaintiff failed "to sufficiently allege a causal connection between" alleged RESPA violation and "actual damages").

### D.       Plaintiffs Peyton's and Easter's RESPA Claims Are Time-Barred.

The statute of limitations for a RESPA claim is one year from the "date of the occurrence of the violation." 12 U.S.C. § 2614. Peyton alleges that he "used Veterans United Home Loans to purchase a property" on May 17, 2022, and Easter alleges he "used Veterans United Home Loans to purchase a property" on September 30, 2022. Compl. ¶¶ 12, 14. To be timely, they were required to file their RESPA claims by May 2023 and September 2023, respectively. Because it is "clear from the face of the complaint" that the claims are untimely, they should be dismissed. *See White v. CTX Mortg., LLC*, 2014 WL 1806705, at *2 (W.D. Mo. May 7, 2014) (dismissing RESPA claim as time-barred where loan closed "several years" before complaint was filed); *Colbert v. Millenia Hous. Mgmt.*, 2024 WL 1018540, at *3 (W.D. Mo. Mar. 8, 2024) (dismissing MMPA claim brought 8 years after plaintiff entered lease that was subject of dispute).

Plaintiffs cannot avoid the statute of limitations with conclusory allegations that Defendants engaged in fraudulent concealment to hide their alleged RESPA violations. The

22

alleged fraudulent act must be "outside of and after the conduct making up the underlying claim." *See In re Smitty's*, 2023 WL 5670166, at \*18 (W.D. Mo. July 18, 2023); *Ripplinger v. Amoco Oil Co.*, 916 F.2d 441, 442 (8th Cir. 1990) (holding that fraudulent concealment "requires an act of affirmative misrepresentation over and above the acts creating the alleged cause of action"). And "[t]o establish a claim of fraudulent concealment to equitably toll a federal claim," the plaintiff must allege a fraudulent act and "plead with particularity the 'who, what, when, where, and how'" of act. *White*, 2014 WL 1806705, at \*4; *see also U.S. ex rel. Josh v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (Rule 9(b)'s heightened pleading requirements requires "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.").

Plaintiffs' tolling allegations are completely coextensive with their underlying claim. Compl. ¶¶ 79-80. Even if they were not, the allegations are not pleaded with anything resembling the particularity required by Rule 9(b). For example, the "Agent Expectations" document the Complaint relies on to allege "steering" is publicly available.[16] Compl. ¶ 41. Plaintiffs, "by the exercise of ordinary care. . . could have questioned and discovered" that VUR has arrangements with its real estate agents. *See Huffman v. Credit Union of Texas*, 2013 WL 1121268, at \*4 (W.D. Mo. Mar. 18, 2013) (rejecting fraudulent concealment tolling claim).

Plaintiffs fare no better with their allegation that there "was no reasonable way for the public, including Plaintiffs, to know that Defendants are simply a private, for-profit entity, who have no unique connections to the VA." Compl. ¶ 79. The fact that VUHL is a private entity is obvious from the clear disclosures, *supra* Background, Section C; Ex. C, the references to private lenders on the VA's own website, and common sense.

---

[16] *See* Veterans United Realty, Agent Expectations, https://www.veteransunitedrealty.com/assets/pdfs/agent-expectations.pdf (last visited Apr. 13, 2026); *infra* n. 14.

## IV. PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM.

Plaintiffs allege that Defendants were unjustly enriched from accepting "referral fee payments by agents and profits from mortgages to which class members were improperly steered and induced." Compl. ¶¶ 126, 128-30. This claim should be dismissed for three reasons.

*First*, the referral fee was not a benefit conferred upon Defendants by the *Plaintiffs*. Network agents, not the Plaintiffs, would pay any referral fee due to VUR if their lead closed on a home. *Id.* ¶¶ 4, 9, 12-14, 35, 48, 57, 108. This is fatal to Plaintiffs' unjust enrichment claims, which requires "a benefit conferred upon the defendant by *the plaintiff.*" *ACLU/Eastern Mo. V. Miller*, 803 S.W.2d 592, 595 (Mo. 1991) (en banc) (emphasis added). Indeed, the remedy for unjust enrichment is restitution of the conferred benefit. Since the Complaint does not allege Defendants collected money from Plaintiffs, there is nothing to restore.

*Second*, Plaintiffs entered into mortgage contracts with VUHL. Compl. ¶¶ 12-14. A tort theory of unjust enrichment is unavailable to a plaintiff who, as here, "entered into an express contract for the very subject matter for which [they] seek[] recovery." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Wright v. Oasis Legal Fin., LLC*, 2020 WL 1433645, at *3 (E.D. Mo. Mar. 24, 2020) (dismissing unjust enrichment claim based on allegedly illegal interest rates of loan agreements); *Cregan v. Mortgage One Corp.*, 2016 WL 3072395, at *5 (E.D. Mo. June 1, 2016) (dismissing unjust enrichment claim based on allegedly collecting interest and late charges and fees in contravention of loan agreement terms).

*Finally*, Plaintiffs' unjust enrichment claim is derivative of their RESPA claim and fails with it. *See In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 936 (6th Cir. 2014) (affirming dismissal of "derivative" unjust enrichment claim asserted under Tennessee law in MDL proceeding); *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, 2017 WL 3671264, at *15 (E.D. Pa. Aug. 23, 2017) (dismissing "duplicative" unjust enrichment claim under Pennsylvania law); *Gedalia v. Whole Foods Market Servs., Inc.*, 53 F.Supp.3d 943, 961 (S.D. Tex. Sep. 30, 2014) (dismissing unjust enrichment claims based on same alleged statutory violations); *see also Jackson*

24

*v. Wells Fargo Bank, N.A.*, 2013 WL 5945732, at *25 (W.D. Pa. Nov. 6, 2013) (unjust enrichment claim would be dismissed "in the absence of a RESPA violation.").

## V.      PLAINTIFFS ENGAGE IN IMPERMISSIBLE GROUP PLEADING.

Plaintiffs' Complaint improperly and ambiguously levies allegations at "Defendants" and "Veterans United" without specifying which Defendant engaged in the alleged misconduct to support the claim. *See, e.g.*, Compl. ¶¶ 4, 8, 12-14, 35, 48, 95-118. This pleading deficiency is visceral in their multiple efforts at alternative pleading. For example, they allege incoherently that all "Defendants" received, paid, and accepted "kickbacks" all at the same time, and that all "Defendants" both "provide[ed] business incident to or a part of" a real estate settlement service and that they were "paid without rendering any settlement services." *Id.*¶¶ 105-110.

"Allegations that vaguely refer to ['Veterans United'] do not meet the requirement to plead who, did what, to whom (or with whom), where, and when." *In re Crop Inputs Antitrust Litig.*, -- F.4th --, 2026 WL 924130, at *3 (8th Cir. Apr. 6, 2026) (cleaned up). Plaintiffs' "[a]llegations based on a theory of collective responsibility" are insufficient to state a plausible claim for relief" and the Complaint should be dismissed. *Id.* (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (affirming dismissal of complaint for improper group pleading); *see also Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 832 (D. Minn. 2012) (recommending dismissal of fraud claim because plaintiff's "failure to differentiate among the defendants is fatal to his claim"); *Limo Land, Inc. v. Metro Worldwide, LLC*, 2021 WL 950663, at *1 (W.D. Mo. Mar. 12, 2021) (dismissing claim that fails to allege 'what action (by which Defendant) constituted" the unlawful conduct).

## CONCLUSION

This Court should dismiss the Complaint with prejudice.

DATED: April 13, 2026       Respectfully submitted,

By: */s/ Valerie Hletko*
Valerie Hletko (*admitted pro hac vice*)
Andrew Soukup (*admitted pro hac vice*)
Marianne Spencer*
Rachel Lia*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
vhletko@cov.com
asoukup@cov.com
mspencer@cov.com
rlia@cov.com

Mara Cohara
Brian Fries
LATHROP GPM LLP
2345 Grand Blvd.
Suite 2200
Kansas City, MO 64108
Tel.: (816) 292-2000
mara.cohara@lathropgpm.com
brian.fries@lathropgpm.com

*Attorneys for Defendants*

*\*Petition for admission pro hac vice pending*

26

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

By: */s/ Valerie Hletko*

27