**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CHRISTIAN PEYTON, SALEM ZAHN, ERNEST EASTER, BRYAN DEWAR, BRANDY JACKSON, DONALD TUMINO, JASON CARSON, JENNIFER MILLER, LILLIAN NORRS, SCOTT BRICKEY, KOBE MOYE, JARED FLORES, DAWN JEFFERSON, JONATHON HOUSER, and DAWN JOHNSON, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2:26-cv-04039-WJE |
| VETERANS UNITED HOME LOANS, REALTY SEARCH SOLUTIONS, LLC, REALTY SEARCH SOLUTIONS NETWORK, LLC (d/b/a VETERANS UNITED REALTY), and MORTGAGE RESEARCH CENTER, LLC, | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court is Defendants Veterans United Home Loans; Realty Search Solutions, LLC; Realty Search Solutions Network, LLC (d/b/a Veterans United Realty); and Mortgage Research Center, LLC, Missouri Corporations' (collectively "Defendants") Motion to Dismiss for Failure to State a Claim.[1] (Docs. 42, 43). Plaintiffs have filed suggestions in opposition to the motion (Doc. 44), to which Defendants have filed a reply (Doc. 46). This matter is now ripe

[1] With the consent of the parties, this case was assigned to the Chief United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

for consideration. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

## I. Background

The U.S. Department of Veterans Affairs ("VA") runs a program for veterans and active-duty service members to enable them to purchase a home. As part of the VA Home Loans program, the VA acts as a guarantor for a portion of the mortgage, making it easier for borrowers to qualify for a loan. (Doc. 32 at ¶¶ 1, 44-45). The home loans themselves do not originate from the VA. Rather, borrowers use VA-approved private mortgage brokers. (*Id.* at ¶ 44-45).

Veterans United Home Loans ("VUHL") is the registered trade name of Defendant Mortgage Research Center, LLC, a Missouri company headquartered in Columbia, Missouri. (*Id.* at ¶¶ 32-33; Doc. 43 at 16). Defendant VUHL is a private, for-profit, VA-approved lender; it is not part of, endorsed by, or affiliated with the VA or any government agency. (Doc. 32 at ¶ 2; Doc. 43 at 17). VUHL has originated more VA purchase loans by volume than any other lender in every year since 2016 and markets itself as "The Nation's #1 VA Lender." (Doc. 32 at ¶ 2; Doc. 43 at 16-17, 26).

Defendant Realty Search Solutions Network, LLC, does business as Veterans United Realty ("VUR"). Realty Search Solutions, LLC, is VUR's marketing-arm subsidiary. VUR and Realty Search Solutions are both headquartered in Columbia, Missouri. (Doc. 32 at ¶¶ 34-35; Doc. 43 at 16-17). VUR is a licensed real estate brokerage that employs licensed real estate agents in Missouri and operates a nationwide referral network of over 5,000 agents who are not employed by VUR. (Doc. 32 at ¶¶ 4, 63-64, 68; Doc. 43 at 16, 36). VUR connects agents in its network to potential clients by sending leads to the agent. (Doc. 32 at ¶ 4; Doc. 43 at 35). If that client uses the agent to purchase a home, the agent pays 35% of his or her commission from the sale of the home to VUR. (Doc. 43 at 35; Doc. 32 at ¶¶ 4, 10).

Plaintiffs' Amended Complaint brings numerous claims against the defendants in a purported class action. (*See* Doc. 32). Plaintiffs assert that the defendants are engaging in deceptive advertising, an illegal kickback scheme, violations of consumer protection laws in various states, and unjust enrichment. (*Id.* at ¶¶ 9-12).

### A. The Alleged Deceptive Advertising Scheme

First, Plaintiffs allege that Defendants' name, branding, websites, social media, and other marketing materials are deliberately designed to create the false impression that Veterans United is part of or endorsed by the VA. (Doc. 32 at ¶¶ 2, 45, 49-59). They allege the VUHL homepage, which pairs American-flag imagery with the "#1 VA Lender" tagline, misleads consumers to believe that Veterans United is part of the VA. (*Id.* at ¶¶ 49-50). Plaintiffs contend that though the website has a disclaimer of no government affiliation, it is rendered in small, inconspicuous lettering and is missed by the average consumer. (*Id.* at ¶ 51-53). Some advertising materials do not contain a disclaimer at all. (*Id.* at ¶¶ 57-58). Further, Plaintiffs allege that VUHL's promotion of its panel of "military advisors" serves to reinforce the false impression that it is associated with the VA. (*Id.* at ¶ 105).

### B. The Alleged Steering and Kickback Scheme

Next, Plaintiffs allege that VUHL and VUR are engaged in an illegal reciprocal arrangement. It is alleged that VUR, through its online website, will collect information about pre-qualified homebuyers. (*Id.* at ¶¶ 60-62). VUR sends that information to agents in their network to help connect agents with potential clients. (*Id.* at ¶ 68). In exchange for these leads, agents in the network pay VUR roughly 35% of their commissions on closed referrals. (Doc. 32 ¶¶ 4, 9-10, 62). Additionally, agents in the network are expected to encourage clients to finance through VUHL. (*Id.* at ¶ 71). Agents who fail to keep clients with VUHL stop receiving leads or are dropped from

the referral network. (*Id.* at ¶¶ 4, 80, 84, 87, 90, 96, 111, 115, 118). Although borrowers looking for a home loan may choose any loan officer they want, Plaintiffs claim that VUR's documentation pressures agents to direct clients to VUHL loan officers. (*Id.* at ¶ 71). Agents must notify VUHL and a "Network Development Coach" if a client "pursues other lending options." (*Id.* at ¶ 73). Plaintiffs further contend that Defendants monitor compliance through a proprietary application, AgentDash, which includes a "secret metric" tracking "Alternate Lender Usage." (*Id.* at ¶¶ 72-76, 145, 167). Plaintiffs allege that VUR is a shell company functioning only to collect the 35% fee. (*Id*. at ¶¶ 63-65, 89).

Somewhat separate from the alleged illegal kickback scheme, Plaintiffs claim that VUHL is engaged in a "bait and switch" pricing practice. VUHL will quote a prospective homebuyer with favorable floating interest rates during the shopping phase, only to hike the rates and offer a worse deal at the final offer stage when the buyer is already committed to working with VUHL. (*Id.* at ¶¶ 6, 20, 22, 24). Lastly, it is alleged that VUHL's loans carry above-market rates, a 1% origination fee, and total costs $5,000-$10,000 higher than rates offered by competitors. (*Id.* at ¶¶ 97, 108, 111, 113, 220).

**C. The Named Plaintiffs**

The fifteen named Plaintiffs in this purported class action consist of veterans and military family members who financed home purchases through VUHL between September 28, 2018, and April 17, 2026, in Tennessee, Texas, Pennsylvania, Colorado, Ohio, Kansas, Illinois, New York, Missouri, Florida, and Virginia. (*Id.* at ¶¶ 14-31). The Plaintiffs chose VUHL for their home loans believing, based on its name, website, or other communications, that VUHL was affiliated with or endorsed by the VA, or based on the belief that VUHL would take care to represent their interests as a veteran or military family member. (*Id.*). Real estate agents connected to Defendants allegedly

steered each Plaintiff to use VUHL without disclosing the 35% payment or the alleged steering obligation. (*Id.*). Each Plaintiff contends that this scheme unnecessarily increased the costs of their mortgage and that they overpaid for settlement services. (*Id.*).

## II. Discussion

On February 18, 2026, Plaintiffs Christian Peyton, Salem Zahn, and Ernest Easter filed the original complaint asserting violations of the Real Estate Settlement Procedures Act ("RESPA"), Missouri Merchandising Practices Act ("MMPA"), and unjust enrichment. (Doc. 1). Plaintiffs filed an Amended Complaint on May 4, 2026, adding twelve plaintiffs, one defendant, and Illinois, New York, Ohio, and Texas consumer protection claims. (*See* Doc. 32). The Amended Complaint asserts eight counts: Count 1, violations of RESPA § 2607(a) (nationwide class); Count 2, violations of RESPA § 2607(b) (nationwide class); Count 3, violations of MMPA (nationwide or Missouri class); Count 4, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois class); Count 5, violations of New York General Business Law § 349 (New York class); Count 6, violations of the Ohio Consumer Sales Practices Act (Ohio class); Count 7, violations of the Texas Deceptive Trade Practices-Consumer Protection Act (Texas class); and Count 8, unjust enrichment (nationwide class). (*Id.* at ¶¶ 168-304).

On June 9, 2026, Defendants filed the instant Motion to Dismiss and suggestions in support arguing that all claims should be dismissed because this Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and that the Amended Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docs. 42, 43). Plaintiffs filed suggestions in opposition to the Motion to Dismiss on July 9, 2026. (Doc. 44). In their response, Plaintiffs concede the Texas Deceptive Trade Practices-Consumer Protection Act claim in Count 7. (*Id.* at 17 n.4). Plaintiffs also concede that Plaintiff Jonathon Houser's Ohio Consumer Sale Practice Act claim in Count 6

is time-barred. (*Id.* at 26 n.8). However, Plaintiffs argue on all other counts that this Court has subject matter jurisdiction over the case and that the Amended Complaint properly states a claim for relief. (*See* Doc. 44). On July 30, 2026, Defendants filed a reply reasserting the arguments raised in the Motion to Dismiss. (Doc. 46).

For the reasons that follow, the Court grants in part and denies in part Defendants' Motion to Dismiss the Amended Complaint. Specifically, the Court finds that it has subject matter jurisdiction. Further, the Motion to Dismiss is granted as to Counts 3, 4, 6, 7, and 8, which are dismissed in their entirety. The Motion to Dismiss is granted in part as to Count 1 and Count 2. The Motion to Dismiss is denied as to Count 5. The Court grants Plaintiffs leave to amend the Amended Complaint within fourteen days of the date of this Order.

**A. Legal Standard**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal courts retain the power to hear cases only if authorized to do so by both the Constitution and by statute. *Id*. Article III limits federal jurisdiction to "cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). A court deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must distinguish between a "facial attack" and a "factual attack" on jurisdiction. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In a facial attack, the court considers only the face of the pleadings and the non-movant "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* When a factual attack is brought, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of the safeguards placed by Federal Rule of Civil Procedure 12(b)(6). *Id.* "If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Garret v. Fallon*, 772 F. App'x 376, 377 (8th Cir. 2019).

Upon a party's motion, a court may dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pleadings in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "'Mere conclusory statements' and factual allegations lacking 'enough specificity to raise a right to relief above the speculative level' are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The factual allegations "do not need to be 'detailed,' but they must be 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). Specifically, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton v. Palm*, 621

F.3d 816, 818 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). However, the Court must "accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). The complaint should be construed "liberally." *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir. 2005). The issue in considering a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

Additionally, in ruling on a 12(b)(6) motion to dismiss, the Court is not limited to the four corners of the complaint. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011), *as corrected* (Aug. 4, 2011). The court may consider "materials that are part of the public record or do not contradict the complaint, and materials that are 'necessarily embraced by the pleadings.'" *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Although Rule 8's general pleading standard is relatively liberal, there is a heightened standard for pleading fraud or mistake. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is a pleading requirement," not an affirmative defense or objection. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (4th ed. 2022); *see* Fed. R. Civ. P. 8(c) (listing affirmative defenses that "a party must affirmatively state" in order to avoid waiver). To satisfy Rule 9(b), the plaintiff must "plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (internal quotation

omitted). In essence, a plaintiff must plead the "who, what, where, when, and how" of the circumstances constituting fraud. *Ascente Bus. Consulting, LLC. v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021) (internal citation omitted). Even when Rule 9(b) applies, "it does not render the general principles set forth in [Rule 8] entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other." Wright & Miller, *supra*, § 1298.

**B. Plaintiffs have Article III standing to bring the RESPA claims.**

Defendants allege that Plaintiffs lack Article III standing to bring RESPA claims. (Doc. 43 at 20-22). In response, Plaintiffs present three theories of standing: 1) Plaintiffs have standing by paying for settlement services under RESPA; 2) Plaintiffs have standing because they overpaid for their loans; and 3) Plaintiffs have standing because the illegal kickbacks increased the cost of their loans. (Doc. 44 at 13-16). The Court finds that the Plaintiffs have Article III standing to proceed in this suit.

Defendants' argument that Plaintiffs lack standing is a challenge to the Court's subject matter jurisdiction. *ABF Freight Sys.*, 645 F.3d at 958; Fed. R. Civ. P. 12(b)(1). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen*, 833 F.3d at 908. Facial attacks on the court's jurisdiction "assert that the complaint fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)). A facial attack is restricted to the pleadings, all facts alleged by the non-movant are taken as true, and all inferences are construed in favor of the non-moving party. *Carlsen*, 833 F.3d at 908. "A factual attack occurs when the defendant 'challenges the veracity of the facts underpinning subject matter jurisdiction.'" *Davis*, 886 F.3d at 679 (quoting *Kerns*, 585 F.3d at 193). In that instance, evidence outside the pleadings is considered, and the non-movant does not have the

safeguards provided to Rule 12(b)(6) motions. *Id.* Defendants' Motion does not attack the veracity of the facts supporting the Amended Complaint but rather argues that the Plaintiffs have not alleged sufficient facts to support subject matter jurisdiction. (Doc. 43 at 20-21). Accordingly, this Court will consider the motion a facial attack on its jurisdiction. Therefore, all facts alleged in Plaintiffs' Amended Complaint will be taken as true, and reasonable inferences made in their favor.

A party seeking to invoke a federal court's jurisdiction to decide legal questions must demonstrate standing. *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016). The "irreducible constitutional minimum of standing contains three elements": (1) an injury-in-fact, which is (2) causally connected to the conduct being challenged, and that (3) can likely be redressed by the courts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In order to establish injury-in-fact, the plaintiff must show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized." *Id.* at 560. An injury is concrete if it "actually exist[s]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 339. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation omitted). A statutory violation does not automatically cause harm that constitutes an injury-in-fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citing *Spokeo*, 578 U.S. at 341). However, an intangible harm can still be "concrete." *Id.* ("In determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be 'instructive.' Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a

plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation.").

RESPA prohibits giving or receiving fees, kickbacks, or "thing[s] of value" for the referral of "a real estate settlement service involving a federally related mortgage loan." 12 U.S.C. § 2607(a). Persons violating this prohibition are "liable to the person or persons charged for the settlement service . . . in an amount equal to three times the amount of any charge paid for such settlement service." § 2607(d)(2). "Congress specified in RESPA that by prohibiting kickbacks, the harm it sought to prevent is the increased costs that 'tend' to result from kickbacks' interference with the market for settlement services." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 254 (4th Cir. 2020); *see Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) ("RESPA was intended to reform the real estate settlement or closing process to give consumers 'greater and more timely information' on the nature and the amount of settlement costs and to protect them 'from unnecessarily high settlement charges.'" (quoting 12 U.S.C. § 2601(a))). To enforce the provisions of RESPA, the Consumer Financial Protection Bureau ("CFPB") has promulgated Regulation X. *See* 12 C.F.R. § 1024.

At this juncture, the Plaintiffs' burden to establish standing is to plausibly allege that they suffered concrete injuries, not to prove that they did. *See Dye v. MLD Mortgage Inc.*, CV ELH-19-3304, 2021 WL 3022683, at *12 (D. Md. July 16, 2021). The Court must generally assume the truth of the allegations in the Amended Complaint. *Lujan*, 504 U.S. at 561. The Plaintiffs have alleged that they suffered concrete injury from the Defendants' alleged kickback scheme in the form of higher origination fees, higher interest rates, and inflated loan costs. (Doc. 32 at ¶ 204). Plaintiffs allege that the loans they received from Defendants include "origination fees and closing costs exceeding market rates by $5,000-$10,000 per loan." (*Id.* at ¶ 220). The Plaintiffs allege

throughout the Amended Complaint that the additional money they have paid and will have to pay over the lifetime of the loans is the result of the unlawful kickback arrangement between defendants and having been steered to VUHL for their mortgage by their VUR agents. (*Id.* at ¶¶ 18-27, 31, 131-31, 166, 180). Monetary harm is the quintessential injury-in-fact. *See TransUnion*, 594 U.S. at 425 ("The most obvious [injuries-in-fact] are traditional tangible harms, such as physical harms and monetary harms."). Each Plaintiff alleges this harm has occurred to him or her in particular. (*See* Doc. 32 at ¶¶ 15-31). These allegations are sufficient to plausibly allege that the Plaintiffs have suffered an injury-in-fact that is concrete and particularized.

Defendants argue that the allegations in the Amended Complaint are insufficient because no Plaintiff pleads the interest rate he or she actually paid, the amount of the claimed overpayment, or specific facts showing he or she qualified for a more favorable loan from another VA-approved lender. (Doc. 43 at 21). The Amended Complaint alleges a specific difference between VUHL's pricing and the market: $5,000 to $10,000. (Doc. 32 at ¶¶ 108, 220, 238, 256, 274, 294). It alleges that each Plaintiff's transaction with VUHL and his or her VUR agent contained an undisclosed requirement that the agent pay 35% of his or her commission to VUR, which inflated transaction costs. (*Id.* at ¶¶ 11, 15-31). Whether Plaintiffs will be able to prove these facts or the difference between the interest rates they received from VUHL and what they could have gotten if they had shopped around is not the question at this stage. *See Lujan*, 504 U.S. at 561 (holding that "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage).

The Amended Complaint contains anecdotal claims from anonymous sources that are alleged to be anonymous competitors of the Defendants. (*See* Doc. 32 at ¶¶ 80-133). Defendants argue that use of anecdotal claims from non-parties to the lawsuit fails to satisfy the requirement

that each Plaintiff demonstrate *their own* concrete financial harm. (Doc. 43 at 21). As explained above, each Plaintiff has sufficiently pled individualized harm, regardless of the anecdotal claims with which the Defendants take issue. Further, Defendants' argument that Plaintiffs have not alleged ascertainable loss or actual damages with appropriate specificity goes to the Rule 9(b) pleading standard for fraud or mistake, not whether or not Plaintiffs have Article III standing. *See Arbaugh v. Y&H Corp.*, 546 U.S 500, 511-14 (2006) (cautioning against treating the elements of a claim as jurisdictional prerequisites). The doctrine of standing requires Plaintiffs to plausibly allege a personal, concrete stake in the controversy. The Court finds that they have done so.

**C. The RESPA claims are dismissed in part.**

Defendants argue Plaintiffs' RESPA claims should be dismissed because (1) the Amended Complaint alleges a cooperative brokerage and referral arrangement that falls under the safe harbor provision of RESPA § 2607(c); (2) Plaintiffs fail to plausibly allege a RESPA claim under § 2607(a); (3) Plaintiffs fail to plausibly allege a RESPA claim under § 2607(b); and (4) most of the RESPA claims are time-barred. (Doc. 43 at 35-45). Plaintiffs oppose Defendants' arguments and contend that the safe harbor provision does not apply, the Amended Complaint properly pleads RESPA §§ 2607(a) and (b) claims, and the claims are timely. (Doc. 44 at 29-43). First, the Court finds that the safe harbor provision does not warrant dismissal at this early stage. Next, the Court finds that while Plaintiffs Christian Peyton, Bryan Dewar, Brandy Jackson, Donald Tumino, Jason Carson, Jennifer Miller, Lillian Norrs, Scott Brickey, Kobe Moye, Jared Flores, Jonathon Houser, and Dawn Johnson sufficiently state a claim under § 2067(a) in Count 1, Plaintiff Dawn Jefferson does not. Next, the Court finds that all Plaintiffs bringing a claim under § 2607(b) in Count 2 have sufficiently stated a claim for relief. However, the Court finds that both RESPA claims brought by

Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Tumino, Mr. Carson, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, Mr. Flores, Ms. Jefferson, and Mr. Houser are time-barred.

Accordingly, the Court dismisses the portion of Counts 1 and 2 brought by Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Tumino, Mr. Carson, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, Mr. Flores, Ms. Jefferson, and Mr. Houser.

*1. The § 2607(c)(3) safe harbor provision does not warrant dismissal at this stage.*

Defendants contend the entire referral arrangement at the heart of Plaintiffs' Amended Complaint is exempt under RESPA's safe harbor provision. (Doc. 43 at 35-38). Specifically, they contend that the alleged referral arrangement between VUR and third-party real estate agents is categorically exempt from liability under 12 U.S.C. § 2607(c)(3). Plaintiffs argue that RESPA's safe harbor provision does not apply at this stage because such a determination requires further development of facts through discovery. (Doc. 44 at 40-43). The Court agrees and finds that the safe harbor provision does not warrant dismissal at the pleading stage.

As noted above, RESPA prohibits payment of kickbacks in exchange for referral of real estate settlement services that involve a federally related mortgage loan. 12 U.S.C. § 2607(a). Any person who gives or accepts a prohibited referral fee is "jointly and severally liable to the person or persons charged for the settlement services involved in the violation in an amount equal to three times the amount of any charge paid for such a settlement service." 12 U.S.C. § 2607(d)(2).

RESPA contains a "safe harbor" provision. 12 U.S.C. § 2607(c). It contains a list of fees, salaries, compensation, and payments that are not prohibited by the act. *See Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 313 (2d Cir. 2012) (referring to Section 2607(c), as a "safe harbor provision"). These exemptions include payments made "pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers." § 2607(c)(3).

Regulation X confines the safe harbor to "fee divisions within real estate brokerage arrangements when all parties are acting in a real estate brokerage capacity," and provides it "has no applicability to any fee arrangements between real estate brokers and mortgage brokers or between mortgage brokers." 12 C.F.R. § 1024.14(g)(1)(v).

The Amended Complaint alleges that VUR's agreement with its agents required agents to steer borrowers to VUHL, in exchange for receiving more leads and remaining in the referral network (a "thing of value"). (Doc. 32 at ¶¶ 71-76, 80-118, 145). Whether the challenged receipt of a "thing of value" was made pursuant to a cooperative brokerage arrangement, to which the exemption would apply, or pursuant to a lender-steering arrangement, to which the exemption would not apply, is a question of fact that cannot be resolved at this stage. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 761 n.9 (3d Cir. 2009) ("Whether it is or is not a legitimate business arrangement—and, thus, whether it is exempted by section [2607(c)]—is a fundamental merits question that has no bearing whatsoever on what is before us."); *White v. PNC Fin. Servs. Grp., Inc.*, CIV.A. 11-7928, 2014 WL 4063344, at *8 (E.D. Pa. Aug. 18, 2014) (holding that where the exact arrangement between defendants was unclear, further discovery was required to say whether the claim was legally precluded by the safe harbor provision).

At this stage, the Court must construe the facts in a light most favorable to Plaintiffs and take reasonable inferences in their favor. The Amended Complaint plausibly alleges that Defendants were engaged in an unlawful referral arrangement and steering scheme. Plaintiffs allege VUR was created to collect payments a lender could not lawfully receive and performed no settlement services. (Doc. 32 at ¶¶ 63-65, 89). If proven true, these allegations would place the arrangement outside any bona fide brokerage exemption. *See* § 1024.14(g)(v). The exact details of the arrangement between Defendants will be fleshed out in discovery. It may well be true that the

safe harbor provision applies to Defendants' conduct. But at the pleading stage, Plaintiffs have made sufficient allegations to state a claim that is plausible on its face. The Court cannot say at this stage of litigation that the claim is legally precluded by the safe harbor provision.

2. *All Plaintiffs except for Ms. Jefferson state a plausible claim that Veterans United violated RESPA § 2607(a) in Count 1.*

All Plaintiffs except for Ms. Zahn and Mr. Easter join in Count 1, alleging a violation of 12 U.S.C. § 2607(a). (Doc. 32 at ¶ 168). Defendants argue that these Plaintiffs fail to allege a Section 2607(a) violation because 1) they fail to plead a thing of value; 2) they fail to allege an agreement or understanding between VUR and the real estate agents; and 3) they do not plausibly allege a referral to VUHL within the meaning of the statute. (Doc. 43 at 38-41). In response, Plaintiffs contend that 1) referrals are a thing of value; 2) the steering scheme alleges an agreement or understanding; and 3) VUHL's steering scheme resulted in actual referrals, all in violation of Section 2607(a). (Doc. 44 at 29-36). The Court finds that Plaintiffs have stated a claim under Section 2607(a) as to Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Tumino, Mr. Carson, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, Mr. Flores, Mr. Houser, and Ms. Johnson. However, Ms. Jefferson fails to state a claim under Section 2607(a). Accordingly, Count 1 is dismissed for failure to state a claim as to Ms. Jefferson.

Section 2607(a) of RESPA prohibits kickbacks for referrals of real estate settlement business. 12 U.S.C. § 2607(a); *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012). The section provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

There are three elements of a violation of § 2607(a) that must be alleged in order to survive a motion to dismiss: "1) a payment or a thing of value; 2) made pursuant to an agreement to refer settlement business; and 3) an actual referral." *Egerer v. Woodland Realty Inc.*, 556 F.3d 415, 427 (6th Cir. 2009) (citing *Culpepper v. Iriwn Mortgage Corp.*, 491 F.3d 1260, 1265 (11th Cir. 2007)). A "thing of value" is statutorily defined as "any payment, advance, funds, loan, service, or other consideration." 12 U.S.C. § 2602(2). A "thing of value" is "broadly defined" and includes "the opportunity to participate in a money-making program." 12 C.F.R. § 1024.14(d). An exchange of a "thing of value" is synonymous with a payment and does not require transfer of money. *Id.*

Regulation X provides that an agreement "need not be written or verbalized but may be established by a practice, pattern or course of conduct," and that repeated receipt of a thing of value connected to referral volume "is evidence" of such an arrangement. § 1024.14(e). "A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service." § 1024.14(f)(1).

In Count 1 of the Amended Complaint, Plaintiffs allege that Defendants violated RESPA by promising leads to agents in exchange for those agents steering clients to VUHL and further providing kickbacks for VUR. (Doc. 32 at ¶¶ 168-183). Count 1 alleges that "Veterans United Realty therefore gave a 'thing of value' to real estate brokers and agents—specifically, the actual and continued provision of client referrals, which Network Agents received repeatedly and in volume directly tied to their compliance with the steering scheme. The volume, regularity, and economic value of these referrals—which constituted a primary source of income for Network Agents—establishes that they were not speculative future benefits but actual, ongoing, and realized things of value." (*Id.* at ¶¶ 180-181).

Defendants argue that "hypothetical future leads" are too speculative to be a "thing of value." (Doc. 43 at 39). They cite *Gomez v. Wells Fargo Bank* to support their contention that the Eighth Circuit has determined that future referrals are not a thing of value. (*Id.*); *see Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 663 (8th Cir. 2012). But in *Gomez*, the pleaded "thing of value" was the *possibility* of control over an appraisal process; the pleadings did not allege that defendants actually exercised control over the appraisal process or benefited from any control. *Gomez*, 676 F.3d at 663. Here, by contrast, the pleaded "things of value" are (1) concrete and reciprocal referral leads that generated agent commissions which were calibrated to steering compliance and would be cut off for non-compliance, (2) a 35% commission payment, and (3) the mortgage business steered to VUHL. (Doc. 32 at ¶¶ 4, 9-10, 42, 80-118, 145). Leads actually and repeatedly delivered, as pled here, are not hypothetical or merely "possible." Commissions based on steering are a "credit [] representing monies that may be paid at a future date." *See* 12 C.F.R. § 1024.14(d). Agents remaining in a referral program only if they comply with unlawful steering is "the opportunity to participate in a money-making program." *See id.* The promise to pay a monetary amount for successful settlement service referrals, or withhold an amount for failure to refer, falls into the broad statutory and regulatory definitions of a "thing of value." *See id.*; 12 U.S.C. § 2602(2). The Plaintiffs articulate Defendants' efforts to "influence or manipulate" the home loan process, the reciprocal agreement between VUR and its agents, and the benefits Defendants received at cost to the Plaintiffs. *Cf. Gomez*, 676 F.3d at 663 (describing insufficient pleadings). The Court finds that Plaintiffs have plead a "thing of value."

To survive a motion to dismiss, Plaintiffs must also allege the payments were made pursuant to an agreement to refer settlement business and an actual referral. *Egerer*, 556 F.3d at 427. Here, Plaintiffs' allegations of the alleged steering and kickback agreement are detailed. (*See*

Doc. 32; Doc. 44 at 39-36). The volume-linked patterns alleged in the Amended Complaint are precisely the evidence Regulation X contemplates and are sufficient to push the Plaintiffs' claims over the line of plausibility. *See* 12 C.F.R. § 1024.14(e); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The mechanisms of the alleged agreement are sufficiently detailed. Additionally, all Plaintiffs who bring a claim in Count 1 except for Ms. Jefferson plausibly connect the alleged agreement to their particular experience. Each plaintiff must plead a plausible connection between his or her transaction and the alleged agreement with particularity. *Galiano*, 684 F.3d at 315. Mr. Peyton pleads the referral chain expressly where VUHL pre-approved him and "referred him to a Veterans United associated real estate agent (B.D.)." (Doc. 32 at ¶ 15). Mr. Flores, Ms. Johnson, and Mr. Carson each plead that their agents, C.C., N.A., and B.B., closed 16 of 22, 13 of 20, and 15 of 21 recent transactions with VUHL, each time with a different loan officer, a pattern a loan officer with industry knowledge characterized as demonstrable steering. (*Id.* at ¶¶ 21, 26, 31, 130-133).

For Mr. Dewar, Ms. Jackson, Mr. Tumino, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, and Mr. Houser, the Amended Complaint alleges that an identified agent "encouraged" or "pushed" each individual Plaintiff to work with VUHL and did not disclose that the agent was required to pay a portion of his or her commission back to VUR. (Doc. 32 at ¶¶ 18-20, 22-25, 29, 31). Elsewhere in the Amended Complaint, Plaintiffs repeatedly allege that these requirements only apply to agents in the VUR network. (*See, e.g.*, Doc. 32 at ¶ 69, 71, 73, 89, 118). Though it could be more artfully pled, drawing reasonable inferences in the Plaintiffs' favor leads the Court to conclude that each of these Plaintiffs have sufficiently alleged that his or her real estate agent was

a VUR agent. *See Cook*, 952 F.3d at 938; *Luney*, 432 F.3d at 867 ("The complaint must be liberally construed in the light most favorable to the plaintiff."). At this stage, the Court must accept these factual allegations as true and draw reasonable inferences in the Plaintiffs' favor. *See Cook*, 952 F.3d at 938. As to these plaintiffs, the pleadings nudge the inference of a scheme "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiff Dawn Jefferson, however, only alleges that her real estate agent "encouraged" her to use VUHL and did not present other options. (Doc. 32 at ¶ 27). She does not allege that her real estate agent, K.B., was affiliated with VUHL or VUR in any way, nor does she allege that K.B. was required to pay part of their commission to VUR. Ms. Jefferson does not allege any facts that would connect K.B. with the alleged kickback scheme. Without alleging some connection between K.B. and the alleged kickback scheme, Ms. Jefferson fails to make her claim plausible. *See Twombly*, 550 U.S. at 570. Accordingly, Ms. Jefferson's claim in Count 1 is dismissed.

Defendants next contend that Plaintiffs fail to plausibly allege a "referral" to VUHL because a borrower already in contact with VUHL cannot be "referred" to it. (Doc. 43 at 40-41). A referral is "any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service." 12 C.F.R. § 1024.14(f)(1). The Amended Complaint alleges that borrowers shop multiple lenders, obtain competing pre-approvals, and remain free to close with any competing lender until the loan is made. (Doc. 32 at ¶¶ 70, 154). Being pre-approved for a home loan does not obligate a buyer to work with that specific lender. Agent conduct occurring after a borrower's initial contact or pre-approval with VUHL can therefore still "affirmatively influenc[e]" which lender the buyer ultimately selects, which is all the regulation requires. *See* 12 C.F.R. § 1024.14(f)(1). Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Tumino, Mr. Carson, Ms. Miller, Ms. Norrs, Brickey, Mr. Moye, Mr.

Flores, Mr. Houser, and Ms. Johnson allege that they were encouraged to close with VUHL or were steered towards VUHL, and Mr. Flores, Mr. Carson, and Ms. Johnson demonstrate their respective agents' alleged pattern of recent closings with VUHL. (Doc. 32 at ¶¶ 8, 18-26, 29, 31). An agent's steering need not be the exclusive or even primary reason for a borrower's choice; the regulation asks only whether the conduct influenced it. The Plaintiffs each allege that it did. For example, Mr. Peyton alleges that after pre-approving him, VUHL "referred him to a Veterans United associated real estate agent (B.D.)" to purchase his home. (Doc. 32 at ¶ 15). That clearly alleges a referral within the regulation's definition. *See* 12 C.F.R. § 1024.14(f)(1). The Court finds that Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Tumino, Mr. Carson, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, Mr. Flores, Mr. Houser, and Ms. Johnson sufficiently state a claim for relief in Count 1.

*3. Plaintiffs state a claim under RESPA § 2607(b).*

All Plaintiffs except Mr. Easter join in Count 2, alleging a violation of 12 U.S.C. § 2607(b). (*See* Doc. 32 at ¶ 184). Count 2 alleges that the 35% commission and kickback scheme constitute a violation of RESPA's prohibition against payment for services not rendered. (Doc 32 at ¶¶ 184-205). Defendants argue the Section 2607(b) claims should be dismissed because no Plaintiff alleges they paid a "charge" in violation of RESPA. (Doc. 43 at 42-43). The Court disagrees.

Congress's intent in Section 2607(b) was to "prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' is furnished for the referral of real estate settlement business . . . and to prohibit a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed." *Haug v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) (citing *Mercado v. Calumet Fed. Savings & Loan Ass'n*, 763 F.2d 269, 270-21 (7th Cir. 1985)). The Eighth Circuit

has held that "Section [2607(b)] is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute." *Id.* The "plain language of Section [2607(b)] requires plaintiffs to plead facts showing that the defendant illegally shared fees with a third party." *Id.* (citing *Boulware v. Crossland Mortgage Corp.*, 291 F.3d 261, 265 (4th Cir. 2002), and *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 626 (7th Cir. 2001)). Section [2607(b)] "prohibits transactions in which the defendant shares a 'portion, split, or percentage of any charge' with a third party." *Id.* Kickbacks paid from settlement proceeds, including real estate commissions received as part of a real estate settlement, fall within the definition of the statute. *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, at 1352 (N.D. Ga. 2012) (finding plaintiffs plausibly alleged a claim for relief under 2607(b) where they alleged that real estate listing service and defendant brokers unlawfully split real estate commissions that were paid from the proceeds of a real estate settlement).

The Amended Complaint alleges that VUR agents paid 35% of their commission (the "kickback") from the sale of a property to VUHL. (Doc. 32 at ¶ 197). These kickbacks were paid from settlement proceeds after real estate settlement services were rendered. (*Id.* at ¶ 201); *see Bolinger*, 838 F. Supp. 2d at 1352 (splitting commissions with a listing service who performed no services in exchange for the kickbacks was sufficient to support a claim under 8(b)). The Amended Complaint alleges that the Defendants who received these kickbacks performed no services in exchange for the payments. (*Id.* at ¶¶ 199, 201). The Court finds these facts sufficient to show a plausible claim for relief under Section 2607(b). The Court finds that the Amended Complaint sufficient states a claim for relief in Count 2.

*4. Ms. Zahn's, Mr. Tumino's, and Ms. Johnson's RESPA claims are not time-barred.*

RESPA claims arising under § 2607 must be brought within one year from the date the violation occurs. 12 U.S.C. § 2614. The statute of limitations begins to run from the "date of the occurrence of the violation," which is specific to each transaction. *See id.*

The alleged violation in this case, the giving and accepting of things of value pursuant to unlawfully sharing the closing commission, occurred once per transaction: at closing. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358-59 (5th Cir. 2003) ("The phrase 'the date of the occurrence of the violation' refers to the closing, i.e., when the plaintiffs paid for the insurance, because that is when the agents earned the allegedly prohibited 'thing of value.'"); *Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1151 (D. Haw. 2010) (holding that the one-year period of limitations applies to RESPA claims alleging illegal fees at closing). Each Plaintiff had one year after closing on his or her home purchase to bring a claim for a violation of § 2607. The Amended Complaint was filed on May 4, 2026. Only Ms. Zahn, Mr. Tumino, and Ms. Johnson closed within one year of May 4, 2026. (*See* Doc. 32 at ¶¶ 16, 20, 31). The remaining Plaintiffs closed between September 2018 and March 2025. (*Id.* at ¶¶ 15, 17-19, 21-29). In order for the remaining Plaintiffs to proceed on their claims, there must be a valid reason to toll the one-year statute of limitations. Plaintiffs advance two tolling theories, but neither succeeds.

First, alleged continual violations do not toll the statute of limitations. Plaintiffs first argue that Defendants' "continual violations of RESPA toll the applicable statute of limitation" because "[t]he steering scheme has been continuous and ongoing, as seen by the fact that there are named plaintiffs with claims as recent as 2025." (Doc. 44 at 38). The cases Plaintiffs cite in support are inapplicable because they involved recurring charges within a plaintiff's own ongoing loan. *Blake v. JPMorgan Chase Bank, N.A.*, 259 F. Supp. 3d 249, 256-67 (E.D. Pa. 2017); *Supriyanto v. Bank of New York*, 2023 WL 7107133, at *6-7 (C.D. Cal. June 29, 2023). Here, by contrast, every charge

at issue was imposed once—at closing. The Amended Complaint alleges no recurring payment, fee, or transfer in any Plaintiff's loan after closing. The only thing that "continued" was Defendants' alleged conduct toward other borrowers, which is not a basis for tolling.

Next, Plaintiffs argue that fraudulent concealment tolls the statute of limitations. (Doc. 44 at 38-40). This is an argument for equitable tolling of the statute. The Eighth Circuit has not spoken on the issue of equitably tolling RESPA claims. However, various Courts of Appeals have held that RESPA claims are eligible for equitable tolling, including fraudulent concealment. *See, e.g.*, *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160-61 (3d Cir. 2016), *as amended* (Feb. 24, 2016) ("We have previously held that the statute of limitations in RESPA is not jurisdictional and is thus eligible for equitable-tolling consideration."); *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) ("[W]e join the majority of our sister circuits and hold that the statute of limitations found in Section 2614 is not jurisdictional in nature and may be tolled based on equitable grounds, including fraudulent concealment."); *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1039 (9th Cir. 2014); *Laws. Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1167 (7th Cir. 1997).

"Equitable tolling 'can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Cunningham*, 814 F.3d at 160. It is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Equitable tolling is "a remedy reserved for circumstances that are 'truly beyond the control of the plaintiff.'" *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 798 (8th Cir. 1998) (quoting *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989)); *see also Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir.1990) ("Equitable tolling is appropriate only when the circumstances that cause a plaintiff to miss the

filing deadline are out of his hands."). "[F]ederal procedural law requires that allegations of fraud, including fraudulent concealment for tolling purposes, be pleaded with particularity." *Great Plains Tr. Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (citing Fed. R. Civ. P. 9(b)); *see White v. CTX Mortg., LLC*, No. 13-0335-CV-W-DGK, 2014 WL 1806705, at *4 (W.D. Mo. May 7, 2014). Plaintiffs must plead, with particularity, "affirmative misrepresentation over and above the acts creating the alleged cause of action." *Fleming v. Bank of Am.*, No. 4:13-CV-00100-NKL, 2013 WL 5719105, at *3 (W.D. Mo. Oct. 21, 2013) (quoting *Ripplinger v. Amoco Oil Co.*, 916 F.2d 441, 442 (8th Cir. 1990)).

Even assuming that the Eighth Circuit would find RESPA claims eligible for equitable tolling, Plaintiffs have not sufficiently pled fraudulent concealment to support equitably tolling their claims. The Amended Complaint fails to describe any particular misconduct above and beyond the acts creating the alleged cause of action that Defendants have engaged in that would justify tolling the statute of limitations. The four "affirmative acts of fraudulent concealment" that Plaintiffs set out are not separate from the steering and kickback scheme at the heart of the case. (*See* Doc. 32 at ¶ 167). The Amended Complaint alleges that Defendants "do not adequately disclose" their lack of VA affiliation, "did not disclose" the fees Network Agents pay, and "did not disclose" the steering requirement, such that "[t]here is no reasonable way for the public, including Plaintiffs, to know" of the arrangement. (*See* Doc. 32 at ¶¶ 165-167). Allegations of nondisclosure do not describe "affirmative misrepresentation over and above the acts created the alleged cause of action." *See Fleming*, 2013 WL 5719105, at *3 (citing *Ripplinger*, 916 F.2d at 442); *New Prime, Inc. v. Eaton Corp.*, No. 16-3407-CV-S-SRB, 2017 WL 5992466, at *3 (W.D. Mo. Mar. 16, 2017) ("Non-disclosure is not enough to qualify as fraudulent concealment."). Additionally, Plaintiffs do not allege how and when they discovered the alleged schemes or how Defendants concealed their

actions to prevent discovery. *See Summerhill*, 637 F.3d at 881 ("By failing to allege when and how he discovered [Defendant's] alleged fraud, [Plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."). There is "no reference to any actions or statements" of concealment beyond the undisclosed arrangement itself. *White*, 2014 WL 1806705, at *4-5. The Plaintiffs have failed to adequately plead fraudulent concealment.

Accordingly, the Court finds that the claims contained in Counts 1 and 2 are time-barred for Mr. Peyton, Mr. Dewar, Ms. Jackson, Mr. Carson, Ms. Miller, Ms. Norrs, Mr. Brickey, Mr. Moye, Mr. Flores, Ms. Jefferson, and Mr. Houser. Counts 1 and 2 are therefore dismissed as to those plaintiffs. However, the claims in Counts 1 and 2 brought by Ms. Zahn, Mr. Tumino, and Ms. Johnson are timely. Counts 1 and 2 remain pending as to Plaintiffs Ms. Zahn, Mr. Tumino, and Ms. Johnson.

**D. The state law consumer protection claims are dismissed in part.**

Eight Plaintiffs assert claims under the consumer protection statutes of five states: Missouri, Texas, Illinois, Ohio, and New York. (Doc. 32 at ¶¶ 206-296). Defendants argue that each state law claim fails to state a claim because they do not allege Defendants engaged in any deceptive or unfair conduct. (Doc. 43 at 22-35). Defendants argue that the Missouri, Illinois, Ohio, and Texas claims also fail because Plaintiffs have not alleged ascertainable loss or injury with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.*). Defendants further argue that the Texas claims fail because Plaintiffs failed to comply with the pre-suit notice requirement, and the Ohio and Missouri claims are time-barred. (*Id.*). Plaintiffs concede the Texas Deceptive Practices Act claim in Count 7, and the Court will not address it. (Doc. 44 at 17). Count 7 is therefore dismissed.

1. *The MMPA claim is dismissed.*

a. Mr. Brickey fails to plead ascertainable loss with particularity.

Defendants argue that Plaintiff Scott Brickey, the sole Missouri plaintiff, failed to state a claim under the Missouri Merchandising Practices Act ("MMPA"). Specifically, Defendants argue Mr. Brickey's MMPA claim should be dismissed because it fails to allege ascertainable loss with particularity and does not allege any unfair or deceptive conduct by Defendants. Further, Defendants argue the claim is time-barred. (Doc. 43 at 23-29). Plaintiffs argue that Mr. Brickey's MMPA claim is well-pled, cognizable under the MMPA, and timely. (Doc. 44 at 18-24). The Court finds that Mr. Brickey fails to plead his MMPA claim with particularity and therefore dismisses Count 3.

The MMPA makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020(1). "Merchandise" includes "real estate or services." Mo. Rev. Stat. § 407.010(4). The extension of credit through a home loan constitutes a "sale" of "merchandise" under the MMPA. *Chamineak v. Jefferson Capital Sys., LLC*, 4:15-CV-419 CEJ, 2015 WL 4207084, at *5 (E.D. Mo. July 10, 2015). "The purpose of the [MMPA] is to supplement the definitions of common law fraud in an attempt to preserve fundamental honest, fair play and right dealings in public transactions." *Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021) (quoting *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. 1994)). "When there is no evidence of a course of conduct . . . that would amount to fraud or deception, MMPA complaints can be dismissed." *Id.* (internal citation omitted).

To state a claim for relief under the MMPA, a plaintiff must allege that he or she "(1) purchased merchandise from [the defendant]; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA." *Goldsmith v. Lee Enter., Inc.*, 57 F.4th 608, 615 (8th Cir. 2023) (internal quotation omitted). MMPA claims accrued after August 28, 2020, must also allege (a) that the plaintiff acted as a reasonable consumer would in light of all circumstances; (b) that the method, act, or practice declared unlawful would cause a reasonable person to enter into the transaction that resulted in damages; and (c) individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty. *See* Mo. Rev. Stat. § 407.025.1. A plaintiff must allege that he suffered an ascertainable loss to state a claim for relief under the MMPA. Mo. Rev. Stat. § 407.025.1(1); *Schulte*, 997 F.3d at 825-26. To determine whether a plaintiff has suffered an ascertainable loss, Missouri courts employ the "benefit of the bargain" rule. *Goldsmith*, 57 F.4th at 615. "The benefit of the bargain is the difference between the value of the product as represented and the actual value of the product as received." *Id.* (internal quotation omitted). Importantly, "[c]laims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017)). A plaintiff must plead ascertainable loss with particularity as to the value represented and the actual value of the product. *Id.* at 830.

Mr. Brickey's allegations fall short of the pleading standard for claims of omission under the MMPA. The Rule 9(b) pleading standard requires a plaintiff to "plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained

as a result." *Raynor*, 690 F.3d at 955 (internal quotation omitted). Mr. Brickey fails to meet the pleading standard.

The Amended Complaint alleges that Mr. Brickey paid more for his VUHL mortgage than he should have in the competitive market. (Doc. 32 at ¶¶ 24, 211-224). It alleges that Mr. Brickey's real estate agent did not disclose to him that she had to pay a substantial portion of her agent's commission back to Veterans United, nor that she was required to steer Mr. Brickey to close with VUHL. (*Id.* at ¶ 24). Mr. Brickey states that Veterans United "suddenly" increased his interest rate at closing. (*Id.*). But Mr. Brickey does not plead the amount he paid for his mortgage or the actual value of the mortgage as received, which is required to plead ascertainable loss. *See Hennessey*, 86 F.4th at 830 (affirming dismissal of a complaint that "alleges no facts supporting [plaintiff's] information-and-belief allegations and provides no insight into what the actual value of [the product] at the time of the transaction or how [plaintiff] might determine it" and holding plaintiff "must plead with particularity not only the value represented, but also the value of the product as received in order to establish ascertainable loss"). In short, Mr. Brickey does not sufficiently plead the "who, what, where, when, and how of the fraud." *Bryan v. Bank of Am., N.A.*, 4:17CV1616 RLW, 2018 WL 485968, at *5 (E.D. Mo. Jan. 18, 2018). Mr. Brickey must do more than allege that he overpaid for his mortgage; he must plead a specific value differential. *Hennessey*, 86 F.4th at 830. The Amended Complaint does not plead an ascertainable loss with the particularity required to state a claim for omission under the MMPA.

b. Mr. Brickey's MMPA claim is time-barred.

Even if Mr. Brickey's MMPA claim was well-pled, the Court finds that it is time-barred.

The statute of limitations for an MMPA claim is five years. *See* Mo. Rev. Stat § 516.120; *Huffman v. Credit Union of Tex.*, 758 F.3d 963, 967 (8th Cir. 2014) ("[T]he MMPA contains no

special statute of limitations, so the five-year statute of limitations in § 516.120 applies to civil actions brought under § 407.025(1).”). A cause of action under the MMPA accrues “on the date of purchase . . . or upon receipt of notice of a method, act, or practice declared unlawful by” the MMPA. Mo. Rev. Stat. § 407.025(4).

The statute of limitations on Mr. Brickey’s claim began to run when he closed on his home purchase. The Amended Complaint alleges that Mr. Brickey purchased his home on August 19, 2019. (Doc. 32 at ¶ 24). Plaintiffs represent in their Suggestions in Opposition that this statement was in error, and Mr. Brickey in fact purchased his home in January 2021. (Doc. 44 at 23). Regardless of whether the statute of limitations began running on August 19, 2019, or at some time in January 2021, more than five years passed from either date before the Amended Complaint was filed on May 4, 2026. (Doc. 32). Plaintiffs argue that Mr. Brickey’s MMPA claim is timely because the statute of limitations has been tolled by Defendants concealing the fraud. (Doc. 44 at 23-24).

“To establish fraudulent concealment and toll the applicable statutes of limitations, the concealment must be fraudulent or intentional and, . . . there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.” *Loy v. BMW of N. Am., LLC*, 2020 WL 5095372, at *3 (E.D. Mo. Aug. 28, 2020) (internal quotation omitted). The fraudulent concealment “must be something more than mere silence on defendant's part . . . usually the employment of some means or device to prevent discovery should be shown.” *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 920 (8th Cir. 2008). Non-disclosure is not enough to qualify as fraudulent concealment. *Ripplinger*, 916 F.2d at 442; *Owen*, 533 F.3d at 920 (citing *Gilliam v. Gohn*, 303 S.W.2d 101, 107 (Mo. 1957)). Fraudulent concealment must be pled with the same level of particularity as a fraud claim under Rule 9(b). *Summerhill*, 637 F.3d at 880.

Mr. Brickey's fraudulent concealment argument to toll the statute of limitations on his MMPA claim fails for the same reason that Plaintiffs' argument to toll the statute of limitations on the RESPA claims fails. Mr. Brickey has not pleaded fraudulent concealment with the specificity required by Rule 9(b). Mr. Brickey has not alleged any facts of concealment above and beyond the alleged scheme underlying the suit. *Ripplinger*, 916 F.2d at 442. Nor does the Amended Complaint allege when or how Mr. Brickey discovered the alleged misconduct or what diligence he exercised in the intervening years, allegations Rule 9(b) requires of a party invoking concealment. *See New Prime Inc. v. Eaton Corp.*, 2017 WL 5992466, at *3 (W.D. Mo. Mar. 16, 2017) (explaining fraudulent concealment's pleading requirements for tolling a statute of limitations). "The crux of a fraudulent concealment claim is showing that the defendant 'affirmatively intended to conceal from plaintiff the fact that the plaintiff had a claim against the defendant.'" *Owen*, 533 F.3d at 920 (quoting *Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 259 (Mo. Ct. App. 2006)). Mr. Brickey has not met this standard.

Plaintiffs argue that tolling is a question of fact not suitable for dismissal at the pleading stage. (Doc. 44 at 23). That tolling may present fact questions when adequately pleaded does not excuse a plaintiff from pleading it adequately in the first instance. The authorities Plaintiffs cite each involve district court decisions where the courts found concealment allegations were pled with sufficient particularity. *See Loy*, 2020 WL 5095372, at *3; *Buchholz v. Gen. Motors LLC*, No. 23-06004-CV-SJ-BP, 2023 WL 11697073, at *5 (W.D. Mo. Aug. 18, 2023). These cases do not dispense with the requirement to plead an act distinct from the underlying nondisclosure.

Accordingly, because he fails to plead his ascertainable loss with sufficient particularity and because his claim was filed outside of the statute of limitations, Mr. Brickey's MMPA claim is dismissed. Defendant's Motion to Dismiss is granted as to Count 3.

2. *Ms. Miller and Mr. Moye fail to state a claim under the Illinois Consumer Fraud Act.*

Defendants next argue that the Illinois Plaintiffs, Jennifer Miller and Kobe Moye, fail to state a claim under Illinois Consumer Fraud Act ("ICFA"). Specifically, they argue Ms. Miller and Mr. Moye fail to allege deceptive conduct and fail to allege actual loss. (Doc. 43 at 31-32). The Plaintiffs argue that the ICFA claims are well-pled. (Doc. 44 at 24-26). The Court finds both Ms. Miller and Mr. Moye fail to state a claim under ICFA with the required particularity. Accordingly, Count 4 is dismissed in its entirety.

To plead an ICFA claim, a plaintiff must allege "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). The statute permits claims of deceptive conduct, unfair conduct, or both. *Benson*, 944 F.3d at 646 (citing *Vanzant*, 934 F.3d at 738). If a plaintiff alleges deceptive conduct, Rule 9(b)'s heightened pleading standard applies and the plaintiff must plead the "who, what, when, where, and how" of the fraud. *Id.* "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (internal quotation omitted).

"Omitting or concealing a material fact is deceptive conduct." *Fleury v. Gen Motors LLC*, 654 F. Supp. 3d 724, 732 (N.D. Ill. 2023) (quoting *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (2001)). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." *Id.* (quoting *Perona v. Volkswagen of Am., Inc.*, N.E.2d 859, 866 (1997)); *Toulon v. Cont'l Casualty Co.*, 877

F.3d 725, 740 (7th Cir. 2017). To be actionable, however, an "omission" must be "an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017); *De Bouse*, 922 N.E.2d at 316 ("If there has been no communication with the plaintiff, there have been no statements and no omissions.").

Count 4 of the Amended Complaint alleges that Ms. Miller and Mr. Moye were injured by Defendants' deceptive advertising and kickback scheme, which occurred within the state of Illinois, was unlawful under the ICFA, and caused them to overpay for their settlement services. (Doc. 32 at ¶¶ 22, 25, 225-241). Ms. Miller states she used VUHL to purchase her home on March 7, 2025. (*Id.* at ¶ 22). Ms. Miller states that her real estate agent told her that VUHL would offer her better deals in comparison to other mortgage companies, that VUHL was a "good mortgage company to use," and that she should not use Rocket Mortgage. (*Id.* at ¶ 22). She used VUHL because she "assumed, based on the name, website, and flyers mailed to her, that it was related to the VA and would offer veterans the best deals possible." (*Id.*). Ms. Miller further alleges that Veterans United increased her closing costs and she eventually refinanced with a different mortgage company. (*Id.*).

Mr. Moye raises similar allegations, including that his real estate agent told him "not to shop around for other mortgages." (*Id.* at ¶ 25). Mr. Moye states he used VUHL to purchase his home on June 13, 2023. (*Id.*). He believes the VUHL appraiser "did not adequately appraise his property" and he is planning to initiate a short sale on his home to avoid "additional losses." (*Id.*). Both Ms. Miller and Mr. Moye allege Defendants' conduct was unfair and deceptive, and VUHL intentionally failed to disclose the alleged kickback scheme, "which a reasonable person would have deemed material." (*Id.* at ¶ 230).

First, the Court finds that Ms. Miller and Mr. Moye have not stated with particularity the circumstances constituting fraud. The Amended Complaint alleges communications that may have plausibly influenced Ms. Miller and Mr. Moye to act in a certain way. (Doc. 32 at ¶¶ 22, 25). For example, Ms. Miller alleges that her real estate agent told her VUHL would offer her better deals and steered her away from a competitor she was considering while concealing the commission payment and steering obligation. (Doc. 32 at ¶ 22). But she does not allege the time, place, or method of the communication. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006) (holding that Rule 9(b) was not satisfied where the Complaint did not plead certain details of the alleged fraudulent scheme). Mr. Moye alleges his agent told him "not to shop around for other mortgages," but does not plead the time, place, method of communication, or that this was somehow deceptive or unfair. *Camasta*, 761 F.3d at 737. Both plaintiffs refer to Defendants holding themselves out to be part of the VA and engaged in a scheme of false advertising. (Doc. 32 at ¶¶ 230, 234). Ms. Miller states that she received advertising materials from Defendants that gave her this impression, but does not plead when she received these materials, what they contained, how they gave her the impression that Defendants were affiliated with or part of the VA, or when she learned that this was not true. (*See id.*). Mr. Moye does not state that he has ever seen advertising materials from Defendants. (*Id.* at ¶ 25). Ms. Miller and Mr. Moye have each failed to state an ICFA claim with Rule 9(b) particularity.

Mr. Moye's claim suffers further defects. He alleges that he is planning to initiate a short sale on his home to avoid additional losses. (Doc. 32 at ¶ 25). "The actual damage element of a private ICFA action requires that the plaintiff suffer actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (internal citation omitted). Mr. Moye does not reference an out-

of-pocket expense or any actual loss he has suffered as a result of Defendants' conduct. *See Camasta*, 761 F.3d at 739-40 (affirming dismissal where the plaintiff did not allege particularized actual loss from his own purchase). He states he is seeking to avoid "additional" losses but does not appropriately plead what, if any, his initial losses were. At best, the Amended Complaint references hypothetical loss that has not yet taken place. Mr. Moye fails to plead actual loss and fails to state a claim under the ICFA.

Both Ms. Miller and Mr. Moye fail to state an ICFA claim with the required Rule 9(b) particularity, and Mr. Moye fails to plead actual damage. Defendants' Motion to Dismiss Count 4 is granted.

3. *Ms. Norrs states a claim under New York General Business Law § 349.*

Defendants argue that Ms. Norrs failed to plead a claim under New York General Business Law ("GBL") § 349 because she does not allege any materially misleading conduct by Defendants. (Doc. 43 at 34-35).

Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." N.Y. Gen. Bus. L. § 349. A claim brought under § 349 must allege that the defendant engaged in consumer-oriented conduct that was materially misleading and resulted in injury. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Kock v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (2012)). "Materially misleading" is interpreted objectively and the alleged conduct must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 123 (2d Cir. 2007)).

Defendants argue that in Count 5, Ms. Norrs does not allege "materially misleading" conduct by Defendants or state that the failure to disclose the commission steering and kickback arrangement were "material" facts that impacted Ms. Norrs' decision. (Doc. 43 at 34-35). Ms. Norrs sufficiently alleges that the act or practice was consumer-oriented, alleging that Defendants held themselves out to consumers as being affiliated with the VA when in fact they were not. (Doc. 32 at ¶ 248). Next, she sufficiently alleges that this action was misleading in a material respect in that Defendants withheld facts from the Plaintiffs, including the alleged kickback scheme and the fact that it is a private entity not affiliated with the VA, that a reasonable person would have deemed material. (*Id.* at ¶ 248-250). She alleges that she found this material, stating that she "used [VUHL] because employees at Veterans United told her it was a VA company." (*Id.* at ¶ 23). Lastly, she alleges that she was injured by this deceptive conduct in the form of higher interest rates on her mortgage and higher fees resulting from the alleged kickback arrangement. (*Id.* at ¶ 256). Ms. Norrs clearly states the misrepresentations impacted her decision to close with VUHL. She has sufficiently stated a claim under New York GBL § 349. Accordingly, Defendants' motion to dismiss Count 5 is denied.

4. *Mr. Tumino fails to state a claim under OCSPA.*

Defendants argue that the Ohio Plaintiffs, Jonathon Houser and Donald Tumino, failed to state a claim under the Ohio Consumer Sales Practices Act ("OCSPA"), and that Mr. Houser's claim is time-barred. Specifically, Defendants argue Mr. Tumino's OCSPA claim should be dismissed because it fails to allege any deceptive conduct by Defendants or actual damages. (Doc. 43 at 32-34). Plaintiffs concede that Mr. Houser's claim is time-barred. (Doc. 44 at 26 n.8). Mr. Houser's OCSPA claim is therefore dismissed. However, Plaintiffs argue that Mr. Tumino's claim

is well-pled. (Doc. 44 at 26-27). The Court finds that Mr. Tumino fails to state a claim under OCSPA. Count 6 is therefore dismissed in its entirety.

The OCSPA prohibits "unfair, deceptive, and unconscionable practices in consumer sales transactions." *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006); Ohio Rev. Code §§ 1345.02(A), 1345.03(A). An unfair or deceptive consumer sales practice is one that misleads consumers about the product they are purchasing. *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 618 (N.D. Ohio 2025) (quoting *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 297 (N.D. Ohio 2020)). An unconscionable act or practice is one that manipulates a consumer's understanding of the nature of the transaction. *Id.* "To make out a prima facie claim under the OCSPA, a plaintiff must 'show a material misrepresentation, deceptive act or omission' that impacted his decision to purchase the item at issue." *Temple v. Fleetwood Enterprises, Inc.*, 133 F. Appx. 254, 266 (6th Cir. 2005) (citing *Mathias v. Am. Online, Inc.*, No. 79427, 2002 WL 377159, at *5 (Ohio Ct. App. Feb. 28, 2002)).

Count 6 of the Amended Complaint alleges that Mr. Tumino was injured by Defendants' deceptive advertising and kickback scheme, which occurred within the state of Ohio, was unlawful under the OCSPA, and caused him to overpay for his settlement services. (Doc. 32 at ¶¶ 20, 259-276). Mr. Tumino states he purchased his house in Cleveland, Ohio, on October 18, 2025. (*Id.* at ¶ 20). Mr. Tumino alleges his real estate agent encouraged him to close with VUHL and did not disclose to him that a portion of the agent's commission would be paid to Veterans United. (*Id.*). Mr. Tumino states that he used VUHL because he assumed, "based on the name that it would look out for his interests." (*Id.*). He further states that Veterans United increased his closing costs and charged him a higher interest rate on his loan. (*Id.*) He alleges Defendants' advertising was unfair and deceptive because it presented Defendants as being part of or affiliated with the VA when each

Defendant is a private, for-profit entity. (*Id.* at ¶ 266). Count 6 alleges that VUHL intentionally failed to disclose the kickback scheme, which a reasonable person would have deemed material. (*Id.*). Mr. Tumino alleges that he was injured and suffered ascertainable loss as a consequence of Defendants' misrepresentations and omissions. (*Id.* at ¶ 267-275).

Defendants assert that Mr. Tumino's claim is flawed because he fails to allege that his real estate agent was an agent in the VUR network. (Doc. 43 at 33; *see* Doc. 32 at ¶ 20). The Court has already concluded that Mr. Tumino sufficiently alleged that his real estate agent was part of the VUR network and will not revisit that analysis here. *See supra* II.C.2.

However, Mr. Tumino's claim in Count 6 suffers other fatal errors. The Amended Complaint is sufficiently detailed as to Defendants' alleged steering scheme, kickback scheme, and advertising scheme. But Mr. Tumino does not allege that he personally believed, due to the Defendants' advertising, that Defendants were part of or affiliated with the VA. (*Id.* at ¶ 20). He states that he believed that Defendants "would look out for his interests," but does not allege that this belief arose from the impression that Defendants were part of the VA. He does not indicate that he had that impression at all. Mr. Tumino has not sufficiently alleged that the Defendants made a misrepresentation that was material in that it impacted his decision as to which settlement service to use. *Temple*, 133 F. Appx. at 266. Accordingly, Mr. Tumino fails to state a claim in Count 6. Seeing as the Plaintiffs concede that Mr. Houser's claim in Count 6 is time barred, Count 6 is dismissed in its entirety.

**E. The unjust enrichment claim is dismissed.**

Lastly, Defendants argue that Plaintiffs fail to state an unjust enrichment claim because they do not allege that the Plaintiffs conferred a benefit on Defendants. (Doc. 43 at 45-47). Defendants further argue that Plaintiffs' unjust enrichment claim is foreclosed by the fact that there

is a contract for a mortgage at the center of the dispute. (Doc. 43 at 45). According to Defendants, there are also four Plaintiffs who bring unjust enrichment claims that are time-barred. (*Id.* at 46). In response, Plaintiffs argue that the Amended Complaint adequately states an unjust enrichment claim and that they should be allowed to maintain the claim as an alternative pleading. (Doc. 44 at 43-44). As to the claims that Defendants argue are time-barred, Plaintiffs reiterate their arguments for tolling the statute of limitations made earlier. (*Id.* at 44 n.13). The Court finds that Plaintiffs have not sufficiently pled an unjust enrichment claim because an express contract exists and dismisses Count 8 in its entirety. Accordingly, the Court declines to reach the issue of whether some Plaintiffs' unjust enrichment claims are time-barred.

To state an unjust enrichment claim, the plaintiff must plead that there was "a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of that benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (citing *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006)). Unjust enrichment is a claim in equity. *Affordable Cmtys. of Mo. v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013). A plaintiff may not recover under both a legal claim, such as contract, and a claim in equity, such as unjust enrichment. *Lizama v. Venus Lab'ys, Inc.*, 679 F. Supp. 3d 848, 868 (E.D. Mo. 2023) (citing *MECO Sys., Inc. v. Dancing Bear Ent., Inc.*, 42 S.W.3d 794, 810-11 (Mo. Ct. App. 2001)). While the Federal Rules of Civil Procedure permit a plaintiff to plead claims in the alternative, the Eighth Circuit has held that "the existence of an express contract precludes a claim of unjust enrichment." *Hennessey*, 86 F.4th at 831; Fed. R. Civ. P. 8(d)(2); *see also Topchian*, 760 F.3d at 854 ("There can be no unjust enrichment claim, however,

where an express contract exists." (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010))).

Count 8 alleges that the benefit conferred by the Plaintiffs on the Defendants is the profit from Plaintiffs' mortgages, which was higher than it should have been due to fees baked into the price. (Doc. 32 at ¶¶ 298, 302). Defendants knowingly accepted and retained payments from agents' referral fees, which were derived from Plaintiffs' payments for the settlement services and were therefore "conferred" by the Plaintiffs onto the Defendants. (*Id.*). Additionally, Count 8 alleges that Defendants received these benefits due to unlawful steering arrangements and therefore it would be inequitable for them to retain the benefits. (*Id.* at ¶ 302). The Amended Complaint does not specify that Count 8 is pled in the alternative. (*See* Doc. 32 at ¶¶ 297-304). However, Plaintiffs state in their Suggestions in Opposition to the instant Motion to Dismiss that Count 8 is an alternative pleading. (Doc. 44 at 43). Count 8 generally tracks the required elements for a claim for unjust enrichment. *See Topchian*, 760 F.3d at 854 (listing elements of unjust enrichment claim).

The Defendants argue that since this dispute concerns an express contract, the Plaintiffs cannot bring an unjust enrichment claim. (Doc. 43 at 33). Plaintiffs argue that the allegations of fraudulent steering concern conduct falling outside the contract and so they should be allowed to maintain Count 8 in the alternative. (Doc. 44 at 43). But the profits that Defendants received from Plaintiffs are derived from allegedly higher interest rates and higher fees on the Plaintiffs' home loans, which are contractual agreements. *See Affordable Cmtys.*, 714 F.3d at 1077 (barring claim for unjust enrichment is barred where plaintiff has "entered into an express contract for the very subject matter for which he seeks recovery"); *Bolin v. HSBC Mortg. Servs.*, No. 4:17-CV-1903 RLW, 2018 WL 1175121, at *7 (E.D. Mo. Mar. 5, 2018) (dismissing unjust enrichment claim based

on interest payments and fees related to a mortgage); *Cregan v. Mortg. One Corp.*, No. 4:16 CV 387 RWS, 2016 WL 3072395, at *5 (E.D. Mo. June 1, 2016) (dismissing unjust enrichment claim based on interest fees and late charges). Thus, the Court finds that Plaintiffs have not adequately stated a claim for unjust enrichment because an express contract exists. *See Topchian*, 760 F.3d at 854. Count 8 is therefore dismissed in its entirety.

## III. Conclusion

For the reasons set forth above, the Court finds that Defendants' Motion to Dismiss should be **GRANTED IN PART AND DENIED IN PART**. The case will remain pending, and Plaintiffs have fourteen days to file a Second Amended Complaint.

Accordingly,

IT IS, THEREFORE, ORDERED that Defendants' Motion to Dismiss the Amended Complaint is GRANTED as to Counts 3, 4, 6, 7, and 8. Counts 3, 4, 6, 7, and 8 are hereby dismissed in their entirety without prejudice. It is further

ORDERED that Defendants' Motion to Dismiss the Amended Complaint is GRANTED IN PART as to Counts 1 and 2. Counts 1 and 2 are dismissed as time-barred as to Plaintiffs Christian Peyton, Bryan Dewar, Brandy Jackson, Jason Carson, Jennifer Miller, Lillian Norrs, Scott Brickey, Kobe Moye, Jared Flores, Dawn Jefferson, and Jonathon Houser. The claims brought by Plaintiffs Salem Zahn, Donald Tumino, and Dawn Johnson in Counts 1 and 2 remain pending. It is further

ORDERED that Defendants' Motion to Dismiss the Amended Complaint is DENIED as to Count 5. It is further

ORDERED that Plaintiffs are granted leave to file a Second Amended Complaint within fourteen days of the date of this order.

Dated this 20th day of August, 2026, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
Chief United States Magistrate Judge